Francis H. SMITH, Administrator of the Estate of Ethel E. Smith, Deceased, and Francis H. Smith, in his own right, Plaintiff,

v.

BIC CORPORATION and Societe BIC, S.A., Defendants.

Civ. A. No. 87–795.

United States District Court, E.D. Pennsylvania.

May 31, 1988.

Howard J. Levin, Alan Schwartz, Anapol, Schwartz, Weiss & Schwartz, Philadelphia, Pa., for plaintiff.

David E. Turner, Bingaman, Hess, Coblentz & Bell, Reading, Pa., for BIC Corp.

David M. Kozloff, Kozloff, Diener, Payne & Fegley, Wyomissing, Pa., for Societe BIC, S.A.

## MEMORANDUM AND ORDER

TROUTMAN, Senior District Judge.

Presently before us in the above-captioned action are three (3) "appeals" from Orders entered by United States Magistrate Richard A. Powers, III, to whom this Court had referred the involved discovery disputes for resolution. This action arose out of a fatal fire which, according to plaintiff's Complaint, occured on July 13, 1985. The plaintiff, Francis H. Smith, and his wife, Ethel E. Smith, suffered severe burns in the fire which resulted in the death of Mrs. Smith. The plaintiff brought this action as administrator of his wife's estate and on his own behalf under Section 402A of the Restatement (Second) of Torts, common law negligence principles and for breach of warranty alleging that the fire resulted from the explosion of a disposable, non-refillable butane lighter designed, manufactured and/or sold by the defendants, BIC Corporation (hereinafter "BIC USA") and Societe BIC, S.A. (hereinafter "BIC France").

The initial discovery dispute resulted from defendant BIC USA's refusal to answer certain of the plaintiff's requests for discovery on the ground that the plaintiff's interrogatories and requests for production of documents required it to disclose "confidential information" which, if publicly disclosed, would damage its competitive and financial standing in the marketplace. In response to the plaintiff's motion to overrule its objections to his requests for discovery, BIC USA requested that this Court sustain its objections and/or enter a protective order pursuant to Fed.R.Civ.P. 26(c) which would preclude public disclosure of the information it seeks to maintain as confidential. As noted by Magistrate Powers, this information falls within three (3) general categories: (1) design information;

(2) information regarding other complaints and accidents; and (3) the results of safety tests performed on the lighter involved, a BIC "MOD II".

In a Memorandum–Order dated September 24, 1987, Doc. # 28, Magistrate Powers, in an exhaustive and well-reasoned opinion, denied BIC USA's Motion For A Protective Order, overruled its objections to the plaintiff's discovery requests and directed BIC USA to respond to the plaintiff's outstanding interrogatories and requests for production of documents. The Magistrate found that BIC USA had failed to demonstrate that any of the "design information" that it claimed as "confidential" constituted "trade secrets". He based his decision on: (1) the affidavit of John O. Geremia, Ph.D., an engineer, in which Dr. Geremia stated that the design of the BIC MOD II could be divined through the process of "reverse engineering"; (2) evidence in the record that several major newspapers have published articles describing, in detail, the lighter's design; (3) the fact that certain of the information was publicly disclosed by patents; and (4) defendant BIC USA's admission that one of its competitors has already obtained the design information- which it claims as trade secrets. To the extent that BIC USA argued that it was entitled to a protective order as to "safety testing information" because disclosure of this information would reveal "design information", the Magistrate denied BIC USA's Motion for the reasons just stated, *viz.*, that BIC USA had failed to demonstrate that the "design information" involved protectible trade secrets. As to information pertaining to other accidents and complaints involving the BIC MOD II, the Magistrate concluded that BIC USA had failed to demonstrate that public disclosure of this data would work a "clearly defined and serious injury" upon it, and therefore, that BIC USA had failed to establish "good cause" for the issuance of a protective order as required by Fed.R.Civ.P. 26(c).

In response to the Magistrate's Memorandum–Order of September 24, 1987, Doc. # 28, BIC USA "appealed" said Order to this Court pursuant to 28 U.S.C. § 636(b)(1)(A), Fed.R.Civ.P. 72(a) and Rule 7(IV)(a) of the Local Rules of Civil Procedure for the Eastern District of Pennsylvania. (See Doc. # 33.) BIC USA also asked the Magistrate to reconsider his decision. (See Doc. # 32.) At the same time, BIC USA sought to depose *The Philadelphia Inquirer,* one of the *Inquirer's* reporters, Richard Burke, and John Geremia, the engineering expert who had "spoken" on the plaintiff's behalf, by way of affidavit, in opposition to BIC USA's request for a protective order.

*The Philadelphia Inquirer* had published an article, written by Burke, pertaining to the defendants' manufacture of allegedly defective lighters. The *Inquirer* reported in the article that it had obtained numerous confidential internal documents belonging to BIC USA regarding the allegedly defective product. (See plaintiff's Memorandum of Law in support of its Motion to Overrule BIC USA's Objections to its requests for discovery, Doc. # 14, Ex. A attached thereto.) Dr. Geremia, in his affidavit countering BIC USA's claim that the design information sought by the plaintiff involved trade secrets, cited the *Inquirer* article as support for his claim that the allegedly confidential information was already in the public domain. (See plaintiff's Answer to BIC USA's Motion For Protective Order, Doc. # 23, Ex. A attached thereto.)

The *Inquirer,* Burke and Geremia, in response to the deposition subpoenaes served upon them by BIC USA, filed Motions to Quash the subpoenaes and requested that a protective order be entered precluding BIC USA from deposing them. (See Doc. # # 31 and 38.) These Motions were also referred to Magistrate Powers for disposition.

On October 19, 1987, the Magistrate, in two, separate Memoranda–Orders, Doc. # # 42 and 43, again exhaustive and detailed in their analysis, granted the Motions of the *Inquirer,* Burke and Geremia to quash the subpoenaes BIC USA had served upon them, precluded BIC USA from deposing the three (3) and awarded the *Inquirer,* Burke and the plaintiff counsel fees and costs.

As to the *Inquirer* and Burke, the Magistrate concluded, with regard to BIC USA's attempt to force them to produce the internal BIC USA memoranda they claim to have and to disclose the source from which they obtained the documents, that BIC USA was not entitled to production of this information because: (1) the documents and their source are not relevant to this action since they are BIC USA's own, internal documents, and thus, BIC USA already has access to the information contained therein and (2) the documents, as well as the identity of the informant who provided them, are privileged information within the scope of Pennsylvania's Shield Law, 42 Pa.C.S.A. § 5942. With regard to BIC USA's desire to learn the identity of the *Inquirer's* and Burke's "confidential informant", the Magistrate further reasoned that BIC USA had not demonstrated that any interest it had in obtaining the identity of the source outweighed the *Inquirer's* and Burke's qualified privilege under the First Amendment to the United States Constitution not to divulge the identity of a confidential informant.

As to Dr. Geremia, the Magistrate reasoned that BIC USA was not entitled to depose him because: (1) it had not sought leave of court pursuant to Fed.R.Civ.P. 26(b)(4)(A)(i) to depose "plaintiff's expert" and (2) the subpoena served upon Dr. Geremia violated Fed.R.Civ.P. 45(d)(2) in that he lived more than 100 miles from the location where BIC USA proposed to conduct his deposition, *viz.*, Reading, Pennsylvania. The Magistrate further concluded that the issues upon which BIC USA wished to depose Dr. Geremia, specifically, his knowledge as to what internal BIC USA memoranda were in the hands of third parties and how these third parties had obtained these documents, were irrelevant to this case.

On October 21, 1987, by Memorandum–Order, Doc. #45, Magistrate Powers denied BIC USA's Motion For Reconsideration.

It is upon this tortured procedural history that BIC USA appeals from: (1) the Magistrate's Orders of September 24 and October 21, 1987, denying, respectively, its Motion For A Protective Order and Motion For Reconsideration; (2) the Magistrate's Order of October 19, 1987, quashing BIC USA's subpoena of the *Inquirer* and Burke and awarding the *Inquirer* and Burke counsel fees and costs; and (3) the Magistrate's Order of October 19, 1987, quashing BIC USA's subpoena of Dr. Geremia and awarding the plaintiff counsel fees and costs.

We may reverse or modify the Magistrate's Orders only if they are contrary to law or clearly erroneous. 28 U.S.C. § 636(b)(1)(A); *see also, Cipollone v. Liggett Group, Inc. ("Cipollone I"),* 785 F.2d 1108 (3d Cir.1986).

I.  The Magistrate's Denial Of BIC USA's Motion For A Protective Order And Overruling Of Its Objections To Plaintiff's Requests For Discovery.

Fed.R.Civ.P. 26(c) provides, in its relevant parts, that:

Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following . . . (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way . . .

It is upon this rule of discovery that BIC USA relies to support its contention that it should not be required to produce the information sought by the plaintiff without the benefit of a protective order which would preclude the plaintiff and his counsel from disclosing the information to third parties.

As mentioned earlier, the information which BIC USA claims should be maintained as confidential falls within three (3) discrete categories: (1) design information; (2) information regarding other complaints and accidents involving the BIC MOD II; and (3) the results of safety tests per-

formed by BIC USA on the MOD II. Each category shall be discussed *seriatim.*

## A. Design Information.

As to the "design information" sought by the plaintiff, BIC USA asserted in its original Motion For Protective Order, Doc. # 17, that it is entitled to a protective order as to this information under Fed.R.Civ.P. 26(c)(7) because disclosure of the information would reveal "design specifications and ... a manufacturing process which are not known to (BIC USA's) competitors". (BIC USA's Motion For Protective Order, Doc. # 17, ¶ 3.) BIC USA further alleges that, "Such disclosure would cause (it) to lose its competitive advantage in the marketplace and result in monumental damage to (its) sales". (*Id.* at ¶ 8.) Stated simply, BIC USA contended that this information constituted "trade secrets".[1] The specific design information which BIC USA claims constitutes trade secrets are: (1) tolerances; (2) material requirements; (3) tradenames and identifications of specific materials; and (4) identities of manufacturers and suppliers of such materials. (See Reply of BIC USA to plaintiff's Answer to BIC USA's Motion For Protective Order, Doc. # 25, p. 2.)

The Third Circuit Court of Appeals in the recent case of *SI Handling Systems, Inc. v. Heisley,* 753 F.2d 1244 (3d Cir.1985), applying Pennsylvania law[2], stated that in order for a plaintiff to demonstrate its entitlement to an injunction prohibiting another from using or disclosing "confidential information", the plaintiff must show:

> (1) that the information constitutes a trade secret; (2) that it was of value to the employer and important in the conduct of his business; (3) that by reason of discovery or ownership the employer had the right to the use and enjoyment of the secret; and (4) that the secret was

communicated to the defendant while employed in a position of trust and confidence under such circumstances as to make it inequitable and unjust for him to disclose it to others, or to make use of it himself ...

*Id.* at 1255.

Pennsylvania courts, in defining the term "trade secret", have adopted § 757 of the Restatement of Torts comment b (1939), which provides that:

> A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. It may be a formula for a chemical compound, a process of manufacturing, treating or preserving materials, a pattern for a machine or other device, or a list of customers.

*Id., quoting* Restatement of Torts § 757 comment b (1939).

The Third Circuit in *SI Handling*, in defining when allegedly confidential information constitutes a trade secret, further opined that:

> 'Novelty is only required of a trade secret to the extent necessary to show that the alleged secret is not a matter of public knowledge.... A trade secret may be no more than a slight mechanical advance over common knowledge and practice in the art.' (citation omitted) Matters which are fully disclosed by a marketed product and are susceptible to 'reverse engineering'—*i.e.*, 'starting with the known product and working backward to divine the process which aided in its manufacture,' (citation omitted)—cannot be protected as trade secrets. (citation omitted) ...

> Some factors to be considered in determining whether given information is a

---

1. BIC USA originally claimed that patents it owned regarding the lighter involved "certainly" constituted trade secrets. (Bic USA's Memorandum of Law in support of its Motion For Protective Order, Doc. # 16, p. 14.) BIC USA no longer presses this contention, assumedly because it has come to realize that "patents", by their very nature, can never constitute trade secrets.

2. Neither party to these "appeals" has disputed the Magistrate's application of Pennsylvania's law of trade secrets to this action, nor has any one suggested that the law of some other jurisdiction should be applied. We, therefore, also apply Pennsylvania law.

trade secret are: (1) the extent to which the information is known outside of the owner's business ... (4) *the value of the information to the owner and to his competitors; (5) the amount of effort or money expended by the owner in developing the information; and (6) the ease or difficulty with which the information could be properly acquired by others.*

*Id.* (Emphasis added.)

We are not faced here, of course, with a situation in which an individual or business alleges that another has "misappropriated" its alleged trade secrets; rather, we must examine, in the context of a products liability action, the propriety of the Magistrate's decision that BIC USA was not entitled to relief under Fed.R.Civ. P. 26(c)(7) which would prevent public disclosure of information BIC USA claims as its trade secrets. The distinction is of no consequence, however, as to whether the information BIC USA claims as trade secrets are, in fact, such. The burden of persuasion was upon BIC USA to demonstrate "good cause" for the issuance of a protective order, *see Cipollone I,* and in so doing, to demonstrate that the design information it claims as confidential does, in fact, encompass trade secrets.[3] In this context, by virtue of the very definition of a trade secret, had BIC USA succeeded in demonstrating that the information encompasses trade secrets, it would, by necessity, also have succeeded in demonstrating that it would suffer economic harm as a result of the unfettered public disclosure of the information for which it seeks protection, and hence, shown "good cause" for the issuance of a protective order under Fed.R. Civ.P. 26(c).

Regarding BIC USA's claim that the identities of the manufacturers and suppliers of the materials utilized in the manufacture of the MOD II represent trade secrets, the Third Circuit Court of Appeals clearly rejected a similar, if not identical, claim in *SI Handling.* 753 F.2d at 1257. Here, as in *SI Handling,* the identities of the vendors are already in the hands of third parties, *viz.,* the vendors themselves, who, as noted by the Third Circuit in *SI Handling,* "have every incentive, and every right, to disclose (their identity) to their customers". *Id.* For this reason, we conclude that the Magistrate's Order denying BIC USA a protective order as to the identities of the manufacturers and suppliers of the materials used in the construction of the MOD II was neither clearly erroneous nor contrary to law.

As to the remaining information which BIC USA claims as trade secrets, *viz.,* tolerances, material requirements and tradenames and identifications of specific materials[4], the Magistrate, in both his original decision denying BIC USA's Motion For Protective Order and his decision denying BIC USA's Motion For Reconsideration, focused on the questions of whether this information was either already in the public domain or could be learned through the process of "reverse engineering".[5] Thus, he only focused on the first of the four (4) factors taken by us from the Third Cir-

---

**3.** The Third Circuit Court of Appeals in *SI Handling* assumed, without deciding, that the one claiming ownership of the trade secret(s) had the burden of demonstrating that its product *could not be* "reversed engineered". *SI Handling,* 753 F.2d at 1263. Given our resolution of the dispute pertaining to the design information BIC USA claims as trade secrets, we also need not decide this issue.

**4.** While we question whether a specific material's "tradename", like the identity of its supplier, may constitute an "independent" trade secret, *see SI Handling,* 753 F.2d at 1257, and we fail to see any distinction between the terms "material requirements" and "identifications of specific materials", we will treat each as separate and

distinct for purposes of this decision, and assume that a material's "trade-name" *may* qualify as a trade secret.

**5.** We note that the plaintiff has never attempted to counter the affidavit of Paul LaBrum, BIC USA's Quality Control Manager, that the specific information BIC USA claims as trade secrets could not be divined through the process of reverse engineering. LaBrum's affidavit was not filed as of record until after the plaintiff submitted the affidaivt of Dr. Geremia; hence, Dr. Geremia did not have the benefit of LaBrum's specific description of what BIC USA claimed as trade secrets. The plaintiff has made no request, however, that he be allowed to supplement the record.

cuit's opinion in *SI Handling* and quoted above, *i.e.*, the extent to which the information is known outside of the owner's business. We do not believe the fact that the Magistrate chose to base his decision on this narrow point precludes us from examining the entire record in the context of the other three factors.

As described above in our summary of Pennsylvania's law of trade secrets, BIC USA, in addition to proving that the design information it claimed as trade secrets was, in fact, confidential, was also required to demonstrate that the information provided it with some type of competitive advantage. In examining this element of a trade secret claim, we focus upon: (1) the value of the information to BIC USA and its competitors; (2) the amount of money or effort BIC USA expended in determining, *e.g.*, the optimal materials and tolerances to use in the manufacture of the MOD II lighter; and (3) the ease or difficulty with which BIC USA's competitors could properly acquire or duplicate the information. As to these factors, we can find no evidence in the record to support BIC USA's claim that the allegedly confidential design information it seeks to prevent from being publicly disclosed in this case provides it with some type of competitive advantage over other manufacturers of dispoable, non-refillable butane lighters.

■ The Magistrate, as noted earlier, focused on whether this information was already in the public domain and concluded that it was. The fact that the Magistrate chose to base his decision only on this particular issue did not excuse BIC USA from having to demonstrate that the information provided it with some type of competitive advantage. The only evidence in the record which comes close to supporting BIC USA's claim on this point is the statement in the affidavit of Allen S. Lipson, Esq., BIC USA's corporate counsel, that, "numerous man hours and great expense has been incurred in the development and design of this lighter". (BIC USA's Motion For Protective Order, Doc. # 17, Affidavit of Allen S. Lipson, Esq., attached thereto, ¶ 2; *see also, id.* at ¶ 3 and Affidavit of

Paul LaBrum,, Doc. # 20, ¶ 2.) Nowhere, however, does BIC USA specify that this time and money was expended in order to obtain the information which it claims as trade secrets. As BIC USA readily admits, the "structural" design of the MOD II lighter can in no way constitute a trade secret. It is impossible to determine from the evidence submitted by BIC USA, though, whether all the time and money it avers to have expended in research and development was aimed at obtaining a structural design which consumers would, *e.g.*, find asthetically pleasing or whether the time and money was expended in determining the optimal tolerances and materials to use in the construction of the lighter. Nowhere does BIC USA allege that it took "x" number of man-hours of research and "y" number of dollars to find out that alloy "z" was the best material to use for a certain component of the lighter or that a specific tolerance resulted in the optimal functioning of the lighter. Nowhere does BIC USA allege that it took "x" number of man-hours and "y" number of dollars in research and development to find out that alloy "z" gave them the best lighter at the cheapest manufacturing cost. Further, BIC USA makes no allegation whatsoever that the use of the materials and tolerances it claims as trade secrets gives it a "better" lighter than those manufactured by its competitors either in the nature of cost, quality or both. Nor does it claim that its competitors have attempted to duplicate these tolerances or the use of these materials, but have been unable to do so. Finally, BIC USA makes no claim that the MOD II could not be duplicated without a nominal investment by one or more of its competitors in independent research and development.

Based on the discussion above, we find that we need not even examine the propriety of the Magistrate's conclusion that the information BIC USA claims as trade secrets is already in the public domain or was obtainable through the process of reverse engineering. Even assuming that these findings were clearly erroneous, we would still affirm the Magistrate's conclusion that BIC USA had failed to demonstrate that

the design information involved encompassed protectible trade secrets based on the fact that BIC USA failed to make the requisite showing that the information gave it some type of competitive advantage.

### B. Information Regarding Other Complaints and Accidents.

■ Fed.R.Civ.P. 26(c), as stated earlier, provides that a court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense ..." As to plaintiff's discovery requests pertaining to other accidents and complaints involving the MOD II, BIC USA argued before the Magistrate that this information should also be the subject of a protective order because public disclosure of this information would result in competitive injury and loss of reputation to BIC USA. The Magistrate rejected these arguments, and concluded that BIC USA had failed to demonstrate that it would suffer any specific injury as a result of the public disclosure of this information. On appeal, BIC USA argues, citing *Cipollone I*, that the Magistrate applied an improper standard by requiring it to show a "clearly defined and serious injury", and asserts that *Cipollone I* stands for the exact opposite proposition, *viz.*, that a clearly defined and serious injury need not be shown to establish good cause for the issuance of a protective order under Fed.R.Civ.P. 26(c) based on embarrassment.

■ Based on our reading and interpretation of *Cipollone I*, we initially questioned whether we were reading the same decision as that cited by BIC USA's counsel. BIC USA's interpretation of *Cipollone I* is clearly incorrect. Contrary to BIC USA's assertion, the Third Circuit in *Cipollone I* did not reject the district court's interpretation of Fed.R.Civ.P. 26(c) as requiring a party seeking a protective order based on embarrassment to show a "clearly defined and serious injury" as a result of public disclosure of the information sought to be maintained as confidential. The Third Circuit specifically stated that:

the party seeking the protective order must show good cause by demonstrating a *particular need* for protection. *Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test.* (citations omitted.) Moreover, *the harm must be significant, not a mere trifle.* (citation omitted.)

.... because release of information not intended by the writer to be for public consumption will almost always have some tendency to embarrass, an applicant for a protective order whose chief concern is embarrassment must demonstrate that the embarrassment will be *particularly serious* ... to succeed a business will have to show *with some specificity* that the embarrassment resulting from dissemination of the information would cause a *significant harm* to its competitive and financial position.

*Cipollone I*, 785 F.2d at 1121 (Emphasis added.); *see also, Cipollone II*, 822 F.2d 335, 345–346 (3d Cir.1987).

Based on the portion of the Third Circuit's opinion in *Cipollone I* quoted in the preceding paragraph, it is clear that Magistrate Powers applied the proper legal standard in determining that BIC USA had not shown "good cause" for the issuance of a protective order as to other complaints and accidents involving the MOD II lighter based on the alleged embarrassment and financial harm public disclosure of such information would cause BIC USA. Further, since the record created by BIC USA is devoid of *any* specific examples to support a conclusion that BIC USA would suffer any *significant harm* to its competitive and financial position, the Magistrate quite properly concluded that BIC USA had failed to sustain its burden on this point.

■ The only evidence even approaching the "specificity" and "significance" required was BIC USA's counsel's assertion at oral argument before the Magistrate that BIC USA's stock dropped 33% on the American Stock Exchange on the day an article was published in the *New York Times* regarding the allegedly defective MOD II. (See Transcript of Oral Argu-

ment, Doc. # 52, pp. 7 and 31–33.) We find this claim to avail BIC USA nothing, however. First, we do not believe that BIC USA's counsel's hearsay testimony that he was "advised" by some unnamed individual that when the *New York Times* article was published, BIC USA's stock dropped 33%, constitutes the kind of evidence necessary to support a finding of good cause for the issuance of a protective order. Second, BIC USA made no showing that this drop resulted from the disclosure of information comparable to that pertaining to other accidents and complaints which it seeks to prevent disclosure of here, as opposed to some other piece of information contained in the article. Third and finally, BIC USA made no showing that disclosure to third parties by the plaintiff or his counsel in this case of information they obtain regarding other accidents and complaints involving the MOD II would result in any "further" damage to BIC USA's reputation than that it already claims to have suffered as a result of, *e.g.*, the *New York Times* and *Philadelphia Inquirer* articles. We find BIC USA's argument that it would suffer significant embarrassment and harm as a result of public disclosure of other incidents involving the BIC MOD II lighter particularly disingenuous given the extensive and detailed adverse publicity it claims to have already received. We do not see how disclosure of the information BIC USA seeks to keep private here could provide its competitors with any further weapons which would broaden the arsenal they already possess. For these reasons, we find no lack of "common sense", as is suggested by BIC USA, in the Magistrate's decision as to this issue.

## C. Safety Testing Information.

The final aspect of BIC USA's argument regarding Fed.R.Civ.P. 26(c) is its contention that it is entitled to a protective order which would prevent public disclosure of the safety testing information the plaintiff seeks through his requests for discovery. BIC USA's argument before the Magistrate in this regard was premised upon its contention that disclosure of this information would also require the disclosure of the design information it claims as trade secrets. Based on our conclusion that the Magistrate properly found that the design information claimed by BIC USA as confidential did not encompass protectible trade secrets, BIC USA's argument as to safety testing information collapses under its own weight.

## D. The Relevancy and Broadness of the Plaintiff's Discovery Requests.

BIC USA's final challenge to the Magistrate's decisions of September 24 and October 21, 1987, is its contention that the Magistrate erred in his conclusion that the plaintiff's requests for discovery were neither overbroad nor did they seek information not relevant to his prosecution of this action. On appeal, BIC USA limits its challenge in this regard to the plaintiff's requests for discovery pertaining to other accidents and complaints involving the MOD II. Here, there are two (2) facets to BIC USA's argument. First, BIC USA asserts that the plaintiff's discovery requests should be limited to the two-year period preceding the date of the incident involved herein. Second, BIC USA contends that plaintiff's requests for discovery as to other accidents and complaints involving the MOD II are overbroad because they seek disclosure of all claims, no matter what their nature.

BIC USA's argument that the plaintiff should be limited to discovering only those claims regarding the MOD II made within the two-year period preceding the accident involved here is without foundation. Neither before the Magistrate nor before this Court has BIC USA cited any authority for the proposition it asserts, and we are aware of no case law or interpretation of the federal rules of discovery which supports its request. Our analysis here is limited to whether the information the plaintiff seeks is relevant to the prosecution of this action. BIC USA, understandably, has made no argument that any incidents involving the MOD II which occured, *e.g.*, three (3) years prior to the date of this accident are not relevant simply because they occured that far in the past. The plaintiff is entitled to discover all relevant information on this subject in BIC USA's

possession, regardless of its age, since BIC USA has made no showing that the age of the information has any bearing upon its relevancy. We find no merit in BIC USA's argument that such a two-year limitation should be imposed upon the plaintiff's requests for discovery in order to prohibit his counsel from engaging in what it describes as nothing more than a "fishing expedition" for more business. First, most, if not all, of the applicable state statutes of limitations would preclude any one from bringing a suit based on an accident which occured more than two (2) years ago. Second, most, if not all, of the applicable state rules of professional conduct prohibit the type of direct "solicitation" that BIC USA claims to fear.

As to the second aspect of BIC USA's argument, *i.e.*, that the plaintiff's discovery requests require it to disclose *all* complaints involving the MOD II lighter, we likewise find no merit. Close examination of the plaintiff's interrogatories and requests for production of documents reveals that BIC USA is not being asked to disclose all consumer complaints in its files; rather, it is only being required to provide the plaintiff with information pertaining to incidents involving the MOD II which resulted in injury or death to someone. BIC USA is not being asked to disclose consumer complaints regarding "the color of his or her lighter". Given the limited circumstances in which, as a practical matter, a disposable lighter such as the MOD II may cause bodily injury or death to someone, we do not view plaintiff's interrogatories or requests for production of documents on this subject to be overbroad, overburdensome or as seeking information not relevant, for discovery purposes, to the prosecution of his action.

II. The Magistrate's Orders Prohibiting BIC USA From Deposing *The Philadelphia Inquirer*, Richard Burke and John Geremia, Ph.D., and Imposing Sanctions Upon BIC USA.

██ The Magistrate in his Memoranda–Orders of October 19, 1987, Doc. ## 42

and 43, concluded that BIC USA was not entitled to depose *The Philadelphia Inquirer*, Richard Burke or John Geremia, Ph.D. As stated earlier, BIC USA sought to depose *The Philadelphia Inquirer* and Burke in order to learn what confidential documents belonging to BIC USA they had in their possession and how they had obtained them. One of the reasons stated by the Magistrate for his decision that BIC USA should be prohibited from deposing the *Inquirer* or Burke on these subjects was that the information it sought to obtain from them was not relevant to its defense of this action or the prosecution of its Motion For A Protective Order. On appeal, BIC USA argues that the discovery it seeks from the newspaper and its reporter is relevant to this action because it goes directly to the Magistrate's finding that the design information BIC USA claims as its trade secrets are not such because the information is already in the "public domain".[6]

We find the Magistrate's conclusion that the information sought by BIC USA from the *Inquirer* and Burke is not relevant to this case, in the context of Fed.R.Civ.P. 26(b)(1), to be neither clearly erroneous nor contrary to law. Given our affirmance of the Magistrate's Orders denying BIC USA's request for a protective order, it is clear that any information that either the *Inquirer* or Burke could provide is not relevant to this action. Any information that either one might possess has no bearing upon whether BIC USA demonstrated that the design information it claims as its trade secrets provided it with some type of competitive advantage. Thus, even if we were to conclude that the Magistrate erred in his finding that the design information was in the public domain or could be obtained through the process of "reverse engineering", we would reach the same result and affirm the Magistrate's Order prohibiting BIC USA from deposing either the newspaper or Burke. BIC USA's remedy

---

**6.** In response to BIC USA's appeals of the Magistriate's Orders prohibiting BIC USA from deposing the *Inquirer*, Burke or Geremia, counsel for the three moved to quash BIC USA's appeals as untimely filed. Counsel subsequently withdrew these motions. (See Doc. ## 64 and 65.)

for its claim that Burke and the *Inquirer* improperly obtained the internal BIC USA documents they claim to have lies elsewhere, if at all.[7]

As to John Geremia, the Magistrate prohibited BIC USA from deposing him on the grounds that: (1) BIC USA had failed to seek leave of court pursuant to Fed.R.Civ. P. 26(b)(4)(A)(i) to depose an opposing party's expert witness; (2) BIC USA's subpoena of Dr. Geremia violated Fed.R.Civ.P. 45(d)(2); and (3) the information BIC USA sought to obtain from Dr. Geremia was irrelevant to the issues raised by its request for a protective order.

BIC USA argues that the Magistrate erroneously concluded that Dr. Geremia was an "expert witness", and as a result thereof, that BIC USA was required by Fed.R. Civ.P. 26(b)(4)(A)(i) to seek leave of court to depose him. In the alternative, BIC USA argues that, even if Dr. Geremia could, at the time, have been properly classified as plaintiff's expert witness, BIC USA was not required to seek leave of court to depose him because it only wished to question him as a "fact witness" regarding what internal BIC USA memoranda he was aware of as being in the possession of third parties.[8] Since we find the Magistrate's conclusions as to (1) the efficacy, under Fed.R.Civ.P. 45, of the subpoena that BIC USA served upon Dr. Geremia and (2) the relevancy of the information which it sought from him dispositive, we need not even address BIC USA's arguments as to Rule 26(b)(4)(A)(i).

■ BIC USA in its memoranda of law in support of its appeal focuses on Rule 45(d)(2), and argues that it was willing to depose Dr. Geremia at a mutually agreeable location any where which would comply with Rule 45(d)(2). BIC USA ignores the fact that, as a practical matter, the subpoena it served upon Dr. Geremia was a nullity given Rule 45(d)(1). If BIC USA intended to depose Dr. Geremia at a location which complied with Rule 45(d)(2), it would not have been able to seek the issuance of a subpoena from the Clerk of this Court, since the deposition would not be taken within the confines of this District. Based on the record before us, it appears that the proper procedure would have been for BIC USA to seek, pursuant to Rule 45(d)(1), the issuance of a subpoena from the Clerk of Court for the United States District Court for the District of Maryland. Regardless of where it could have sought a proper subpoena, BIC USA could not have forced Dr. Geremia to appear for a deposition anywhere in this District based on a subpoena issued by this Court. The fact that plaintiff's counsel stated that they would object to BIC USA's deposing Dr. Geremia, regardless of the location, does not negate the fact that BIC USA could not force Dr. Geremia to appear anywhere in this District for his deposition. Hence, while it may not have been necessary for the plaintiff to move to quash the subpoena served upon Dr. Geremia, *see* Fed.R.Civ.P. 45(f), we find no error in his having chosen to do so.

■ We likewise find no error in the Magistrate's decision to prohibit BIC USA from further attempting to depose Dr. Geremia on these matters. The reasoning underlying our affirmance of the Magistrate's Order prohibiting BIC USA from depositing the *Inquirer* or its reporter applies with equal force to the Magistrate's Order prohibiting BIC USA from further seeking to depose Dr. Geremia for the purpose of inquiring as to what internal BIC USA memoranda he is aware of as being in the hands of third parties. This information and how any third parties may have gotten it are simply not relevant to either

---

**7.** Given our decision on this point, we need not address BIC USA's challenges to those portions of the Magistrate's decision dealing with Pennsylvania's Shield Law and the First Amendment.

**8.** At the time BIC USA served the subpoena and notice of deposition upon Dr. Geremia, the plaintiff, in response to BIC USA's expert witness interrogatories, had not listed Dr. Geremia as an expert witness that he expected to call to testify at the trial of this matter. It was not until after he had filed his request for a protective order prohibiting BIC USA from deposing Dr. Geremia that the plaintiff informed BIC USA that he had retained Dr. Geremia as an expert witness expected to testify on his behalf at trial.

BIC USA's defense of this action or the prosecution of its Motion For A Protective Order. Hence, we will affirm the Magistrate's Order prohibiting BIC USA from attempting to depose Dr. Geremia without leave of court as well.

Finally, as to those portions of the Magistrate's Orders awarding *The Philadelphia Inquirer*, Burke and the plaintiff counsel fees and costs, we find no abuse of discretion in the Magistrate's decisions. We, therefore, also affirm these portions of his Orders.

### ORDER

AND NOW, this 31st day of May, 1988, upon consideration of defendant BIC Corporation's Objections to the Orders of United States Magistrate Richard A. Powers, III, entered on September 24, 1987, Doc. # 28, October 19, 1987, Doc. # # 42 and 43, October 21, 1987, Doc. # 45, and November 24, 1987, Doc. # # 62 and 63, and the responses thereto, IT IS ORDERED that:

(1) said Objections are OVERRULED and the Orders of the Magistrate are AFFIRMED in all respects, and

(2) defendant BIC Corporation shall comply with the Orders of the Magistrate within thirty (30) days of the date of the entry of this Order on the record by the Clerk of this Court.