869 F.2d 194
 13 Fed.R.Serv.3d 181, 10 U.S.P.Q.2d 1052,
16 Media L. Rep. 1286
 SMITH, Francis H., Administrator of the Estate of Smith,
Ethel E., Deceased, and Smith, Francis H., In His Own Right
v.
BIC CORPORATION and Societe BIC, S.A.
Appeal of BIC CORPORATION.
 No. 88-1523.
 United States Court of Appeals,
Third Circuit.
 Argued Nov. 14, 1988.
Decided Feb. 28, 1989.
 
 Barbara C. Robertson, Carlos D. Perez-Mesa, Jr., Michael B. Oropollo, (argued), Hoagland, Longo, Oropollo & Moran, New Brunswick, N.J., David E. Turner, Bingaman, Hess, Coblentz & Bell, Reading, Pa., and David M. Given, Phillips, Nizer, Benjamin, Krim & Ballon, New York City, for appellant.
 Samuel E. Klein, Frank L. Corrado, Jr., (argued), Kohn, Savett, Klein & Graff, P.C., Philadelphia, Pa., for appellees, Philadelphia Newspapers, Inc. and Richard Burke.
 Howard J. Levin, Alan Schwartz, (argued), Anapol, Schwartz, Weiss & Schwartz, Philadelphia, Pa., for appellee, Francis H. Smith.
 David M. Kozloff, Kozloff, Diener, Payne & Fegley, Reading, Pa., for appellee, Societe BIC, S.A.
 Before HIGGINBOTHAM and MANSMANN, Circuit Judges, and DUMBAULD, District Judge.*
 OPINION OF THE COURT
 MANSMANN, Circuit Judge.
 
 
 1
 In this appeal from a denial of a motion for a protective order we are faced with a fundamental challenge to the jurisdiction of this court to hear the appeal as well as a challenge to the district court's failure to recognize certain confidential information as a "trade secret" for purposes of Fed.R.Civ.P. 26(c). We conclude, on the basis of Cohen v. Beneficial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), and Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988), that we have jurisdiction under the "collateral order" doctrine. Furthermore, we find that the district court erred in refusing to issue the protective order which would prohibit the plaintiff from disseminating to others the trade secret information gained from the defendant through discovery. However, we will affirm that part of the district court's order which denies the motion for protective order with regard to the discovery of information pertaining to similar accidents.
 
 I.
 
 2
 On July 13, 1985, a cigarette lighter manufactured by the BIC Corporation exploded, causing Ethel E. Smith to sustain second and third degree burns over seventy percent of her body. Her husband, Francis H. Smith, also received injuries when he put out the flames. Mrs. Smith died two days later. Mr. Smith brought this suit on behalf of his wife's estate and in his own right alleging negligence, products liability and breach of warranty on the part of the BIC Corporation as the manufacturer, distributor and seller of the lighter.
 
 
 3
 As part of the discovery process Smith served BIC with Interrogatories and Requests for Production of information in three main categories: design information, safety test results, and information regarding other complaints and accidents. BIC responded with general objections that the information requested was irrelevant, vague, overbroad and intended to harass. BIC further contended that the discovery sought confidential information or trade secrets. BIC moved for a protective order,[1] supported by the affidavits of its quality assurance manager and corporate counsel, stating that the requests for design information and safety test information would reveal the corporation's trade secrets, thereby resulting in competitive injury. In addition, BIC argued that the disclosure of information concerning other accidents or lawsuits would hurt BIC's business reputation and could be exploited by its competition. The district court referred the disclosure dispute to a U.S. Magistrate for resolution.
 
 
 4
 In September 1987, the magistrate issued an order denying BIC's motion for protective order, finding that BIC had failed to demonstrate that any of the design or safety test information constituted trade secrets. The decision was based on 1) the affidavit of John O. Geremia, Ph.D., an engineer, in which Dr. Geremia stated that the design of the lighter could be obtained through "reverse engineering"; 2) evidence that several major newspapers had published articles describing the lighter's design in detail; 3) that certain information was publicly disclosed by patents; and, 4) BIC's admission that one of its competitors already had the design information BIC claimed as a trade secret. In concluding that the information pertaining to other accidents and complaints was not protected, the magistrate noted that BIC had failed to demonstrate that public disclosure of this data would work a clearly defined and serious injury upon it. In other words, BIC had failed to establish "good cause" for the issuance of a protective order as required by Fed.R.Civ.P. 26(c).
 
 
 5
 BIC then served subpoenas and notices of depositions upon Dr. Geremia, Philadelphia Newspapers, Inc., the owner of the Philadelphia Inquirer, and Richard Burke, an Inquirer reporter, in order to determine the extent of information concerning BIC's product design in their possession. BIC also filed an appeal from the magistrate's order with the district court.
 
 
 6
 In response, Smith filed a motion to quash the subpoena and for issuance of a protective order to prohibit the taking of Dr. Geremia's deposition. Smith argued that BIC's action was in violation of Fed.R.Civ.P. 11 and 26(g) and sought sanctions. Reporter Burke and Philadelphia Newspapers, Inc. filed similar motions. After a hearing, the magistrate concluded that BIC was not entitled to depose Dr. Geremia because BIC had failed to obtain leave of the court to depose the plaintiff's expert witness as required by Fed.R.Civ.P. 26(b)(4)(A)(i). The magistrate also found that BIC had violated Fed.R.Civ.P. 45(d)(2) by scheduling the deposition to be taken more than 100 miles from Dr. Geremia's residence.
 
 
 7
 With regard to Burke and Philadelphia Newspapers, Inc., the magistrate decided that BIC was not entitled to the production of information because it was not relevant to the Smith case and--since they were allegedly internal documents from BIC--the documents were already in their possession. In addition, the Pennsylvania Shield Law, 42 Pa.Cons.Stat.Ann. Sec. 5942 (Purdon 1982), provides Burke and Philadelphia Newspapers, Inc. with a privilege to refuse to disclose the identity of their informant and the nature of the information possessed.
 
 
 8
 In May, 1988, the district court affirmed the magistrate's orders in all respects, although on different grounds. The district court determined that in addition to the magistrate's conclusion that the information pertaining to trade-names, tolerances and material requirements was in the public domain and therefore not secret, BIC had failed to show that the information gave them a competitive advantage. Furthermore, the district court found that at the time BIC filed the notice of deposition, it did not know that Dr. Geremia would be Smith's expert witness. Consequently, BIC could not apply for leave of the court to depose Dr. Geremia as required by Fed.R.Civ.P. 26(b)(4)(A)(ii). Nevertheless, the district court upheld the magistrate's order prohibiting the deposition of Dr. Geremia because the intended deposition violated Rule 45(d)(2). With regard to Burke and Philadelphia Newspapers, Inc., the district court upheld the magistrate's order prohibiting their depositions on the basis that any information Philadelphia Newspapers, Inc. or Burke could provide was irrelevant since BIC had failed to show that its trade secrets gave BIC a competitive advantage. BIC filed a timely appeal to this court.[2]
 
 II.
 
 9
 In New York v. United Metals Refining Co., 771 F.2d 796 (3d Cir.1985), and Cipollone v. Liggett Group, Inc., 785 F.2d 1108 (3d Cir.1986), cert. denied, --- U.S. ----, 108 S.Ct. 487, 98 L.Ed.2d 485 (1987), we held that discovery orders are not final orders for appeal purposes and, therefore, cannot be reviewed unless they fall within the collateral order doctrine of Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), and its progeny. As an argument against our jurisdiction in this appeal Smith, Burke and Philadelphia Newspapers, Inc. rely on New York v. United Metals and Cipollone as a blanket rule that discovery orders are not appealable. We have never held as a blanket rule that discovery orders are not appealable. Rather, we address each issue using two vehicles: the collateral order doctrine of Cohen and the petition for writ of mandamus. If an appeal fails to meet the Cohen test, we will review the petition for writ of mandamus and issue the writ where appropriate. We note that in both cases upon which Smith relies the appealing party was denied review under the collateral order exception because it could not meet the three prong Cohen test. Further, having found that we lacked appellate jurisdiction in these cases, we were nevertheless able to review the allegations of error in response to a petition for writ of mandamus. In New York v. United Metals Refining Co., 771 F.2d 796 (3d Cir.1985), we denied mandamus, having found no error on the part of the district court in issuing a protective order. We granted mandamus in Cipollone v. Liggett Group, Inc., 785 F.2d 1108 (3d Cir.1986), cert. denied, --- U.S. ----, 108 S.Ct. 487, 98 L.Ed.2d 485 (1987), when we concluded that the district court had applied the wrong standard in its review and modification of the magistrate's issuance of the protective order.
 
 
 10
 In Cohen, the Supreme Court established a narrow exception to the rule that courts of appeals may review only final decisions of the district courts, namely where the action of the district court
 
 
 11
 did not make any step toward final disposition of the merits of the case and will not be merged in the final judgment. When the time comes, it will be too late effectively to review the present order, and the rights conferred by the [Rule], if it is applicable, will have been lost, probably irreparably.
 
 
 12
 Cohen, 337 U.S. at 546, 69 S.Ct. at 1225.
 
 
 13
 The Supreme Court recently discussed the nature of the collateral order exception to finality in Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988) (district court order denying motion to stay or dismiss action when similar suit is pending in state court is not immediately appealable), thereby affirming its continued viability. The three prong test requires that:
 
 
 14
 First, the order must "conclusively determine the disputed question." Second, the order must "resolve an important issue completely separate from the merits of the action." Third and finally, the order must be "effectively unreviewable on appeal from a final judgment."
 
 
 15
 Gulfstream, 108 S.Ct. at 1136-37, citing, Coopers & Lybrand v. Livesay, 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978) (citations omitted). All three requirements must be met before we have appellate jurisdiction. Cipollone, 785 F.2d at 1117.
 
 
 16
 Utilizing a Cohen analysis, we find that the district court's denial of BIC's motion for protective order is reviewable under the collateral order exception because: 1) the denial of BIC's motion for protective order "conclusively determines" that BIC must disclose its design, safety test, and other accident or complaint information to Smith without any choice as to how the information will be disseminated; 2) the denial resolves issues totally separate from the merits of the case since we can evaluate whether or not a design is a trade secret without reaching the merits of whether or not it is a defective design; and, 3) the order will be "effectively unreviewable" after judgment because once trade secrets are made public, they can obviously never be "secrets" again. We conclude that we have jurisdiction to hear BIC's appeal from the district court's denial of its motion for a protective order.[3]
 
 III.
 
 17
 As a general rule courts "have not given trade secrets automatic and complete immunity against disclosure, but have in each case weighed their claim to privacy against the need for disclosure." Notes of Advisory Committee on Rules, Fed.R.Civ.P. 26(c).[4] The party seeking the protective order must show "good cause." Fed.R.Civ.P. 26(c). See SI Handling Systems, Inc. v. Heisley, 753 F.2d 1244 (3d Cir.1985). We review the magistrate's and the district court's denial of the protective order for errors of law and use a clearly erroneous standard with regard to findings of fact. E.g., Cippollone v. Liggett Group, Inc., 785 F.2d 1108 (3d Cir.1986); Henry Hope X-Ray Prod., Inc. v. Marion Carrel, 674 F.2d 1336 (9th Cir.1982).
 
 
 18
 While we apply the Federal Rules of Civil Procedure in this diversity case, we apply the law of Pennsylvania in our determination of what constitutes a trade secret.[5] Pennsylvania courts have adopted the definition of trade secret found in Comment b to the Restatement of Torts Sec. 757 (1939) which provides:
 
 
 19
 A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. It may be a formula for a chemical compound, a process of manufacturing, treating or preserving materials, a pattern for a machine or other device, or a list of customers.
 
 
 20
 SI Handling, 753 F.2d at 1255. A trade secret can be a plan or process, tool or mechanism, compound or element which is known only to its owner and those employees to whom it is necessary to inform of it. Van Products Co. v. General Welding & Fabricating Co., 419 Pa. 248, 259 n. 4, 213 A.2d 769, 775 (1965). Thus, "[n]ovelty is only required of a trade secret to the extent necessary to show that the alleged secret is not a matter of public knowledge." Id. Consequently, information that is in the public domain or which has been "reverse engineered,"--i.e., garnered by beginning with the finished product and determining the process used to manufacture it--cannot be protected as trade secrets.
 
 
 21
 In SI Handling, we discussed several factors which should be considered in concluding whether certain information is a trade secret:
 
 
 22
 (1) the extent to which the information is known outside of the owner's business; (2) the extent to which it is known by employees and others involved in the owner's business; (3) the extent of measures taken by the owner to guard the secrecy of the information; (4) the value of the information to the owner and to his competitors; (5) the amount of effort or money expended by the owner in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.
 
 
 23
 753 F.2d at 1256, citing Restatement of Torts Sec. 757, comment b (1939). We will consider the district court's findings that BIC has not demonstrated the existence of trade secrets in light of these factors.
 
 
 24
 BIC's request for a protective order covers information in three basic areas: design information (drawings, patents, blueprints, design changes and material changes), safety and quality information (quality assurance procedures, audits, tolerances, specifications, analytical tests, and performance comparisons), and other accident or complaint information. We note initially that the district court relied on SI Handling in reaching the conclusion that the names of manufacturers and suppliers of the materials were not trade secrets because the vendors themselves "have every incentive, and every right, to disclose it...." SI Handling, 753 F.2d at 1257. Our reading of the Plaintiff's Interrogatories reveals no instance in which Smith requested the names of BIC's suppliers; however, to the extent that such information is incorporated into the patents we affirm the district court's finding.
 
 
 25
 BIC's first contention is that its design information, such as blueprints and drawings, constitutes trade secrets because of its confidential nature. Indeed, the affidavit of BIC's general counsel attests to the fact that such information is only released to employees on a "need-to-know basis" pursuant to confidentiality agreements. Yet the district court glossed over BIC's detailed memorandum and concentrated on the fact that BIC had failed to show that the information gave it a competitive advantage. Our review of Pennsylvania law does not find such a concentration on the need to show the existence of a competitive advantage. Rather, the focus is on a determination of whether the secret "is a process or device for continuous use in the operation of the business" and not one known to the trade in general. Air Products and Chemicals v. Johnson, 296 Pa.Super. 405, 418-19, 442 A.2d 1114, 1121 (1982), citing, Restatement of Torts Sec. 757 Comment b (1939). See also Felmlee v. Lockett, 466 Pa. 1, 351 A.2d 273 (1976) and Van Products Co. v. General Welding & Fabricating Co., 419 Pa. 248, 213 A.2d 769 (1965). We find the district court's requirement that BIC prove that its design information gives it a competitive advantage in order to show the existence of a trade secret to be an erroneous application of Pennsylvania law.
 
 
 26
 Because the district court relied on a lack of showing that the information gave BIC a competitive advantage in determining there was no trade secret, it did not examine the propriety of the magistrate's conclusion that much of what BIC contended was a trade secret was already in the public domain. Since we rejected the district court's findings as being clearly erroneous, we must also review the magistrate's determinations.
 
 
 27
 The magistrate concluded that the design information was not a trade secret because much of the information was already in the public domain and that the lighter could be reverse engineered. In so deciding, the magistrate relied on several newspaper articles which had revealed the designs in reports of accidents and on the statement of Dr. Geremia, Smith's expert witness. First, we note that Dr. Geremia's claim of reverse engineering was refuted by the unrebutted affidavit of BIC's quality assurance manager in which he averred that such a process would not yield the specifications and tolerances of the components. Second, a review of the newspaper articles produced by Smith and upon which the magistrate apparently relied, discloses no more design information than what appears in the patent, which BIC concedes is within the public domain. To extrapolate from this to say that all design information is not a trade secret because it is in the public domain is erroneous indeed.
 
 
 28
 BIC's second contention is that its quality control or safety test information also constitutes a trade secret. BIC argues that since these tests involve the analysis of materials, tolerances and specifications of components, they are confidential and protectible as trade secrets. Both the magistrate and the district court considered this information with the design information and concluded that if the design information was not a trade secret, a fortiori neither was the quality or safety test information. Since it was error for both the magistrate and the district court to find that BIC had not proven that the design information was a trade secret, it was likewise error to find that the safety and quality test information was not a trade secret based on their erroneous conclusion. Therefore, we conducted an independent review and have concluded that under Pennsylvania law the safety or quality test information falls within the category of a "compilation of information which is used in one's business" and, as such, is a trade secret. Felmlee, 466 Pa. at 8, 351 A.2d at 277.
 
 
 29
 BIC's third contention is that the district court erred in failing to issue a protective order to limit discovery of other accident or claims information. We agree with the district court's analysis that BIC has failed to show how it would suffer serious harm and embarrassment as a result of the public disclosure of similar accidents or complaints. BIC argues that the stock dropped on the day one of the articles was published in the New York Times. As the district court observed, the statement of BIC's attorney that an unknown individual had told him that the day the New York Times published an article describing the alleged defects of the BIC MOD II lighter, BIC's stock dropped 33% on the American Stock Exchange does not rise to the level of demonstrating the "significant harm to its competitive and financial position" required by Cipollone I, 785 F.2d at 1121. The hearsay statement by BIC's counsel does not constitute the kind of evidence necessary to support a finding of good cause for the issuance of a protective order. Harm to a company's competitive position can flow from both publicity, the focus on information already public, and from the release of confidential information. BIC has made no effort to show here that the alleged harm to its reputation flows from the latter and not the former. Nor do we find any merit to BIC's request that the discovery period be limited to claims within the last two years. As the district court properly noted, the "plaintiff is entitled to discover all relevant information, ... regardless of its age."
 
 IV.
 
 30
 We turn now to the propriety of the sanctions imposed on BIC's counsel, which relies upon the validity of the motion to quash the subpoenas of Dr. Geremia and Richard Burke. The magistrate held, and the district court found no error in his conclusion, that "the information sought by BIC USA from the Inquirer and Burke [was] not relevant to the case." Smith, 121 F.R.D. at 244. Having determined that any information sought from Burke or the Inquirer was irrelevant under Fed.R.Civ.P. 26(b)(1), the magistrate concluded a fortiori BIC's use of the discovery process was improper and in violation of Rules 26(g) and 11. In addition, the magistrate found that the intended deposition of Dr. Geremia was unreasonable and improper because it would be superfluous and irrelevant and was therefore in violation of Rules 26(g) and 11. Consequently, BIC was ordered to pay plaintiff's counsel's expenses resulting from the filing of the motions.
 
 
 31
 We recognize that, having been faced with a denial of a request for a protective order because the court held that the disputed information did not constitute trade secrets, BIC would want to depose the individuals possessing the information in order to determine what remained confidential. However, we agree with the magistrate and the district court that much of the information sought is irrelevant. Therefore, we affirm the order quashing the subpoenas. Nevertheless, the sanctions imposed against BIC must be vacated since counsel's actions are more indicative of vigorous advocacy than of the bad faith or impropriety which Rule 11 is intended to curb. Nor, under the circumstances of the case, do their actions amount to an abuse of discovery under Rule 26(g).[6]
 
 V.
 
 32
 We hold that both the magistrate and the district court erred in denying BIC's motion for a protective order with regard to confidential design, safety, and quality test information. However, we affirm the denial of the protective order with regard to information concerning other accidents or complaints. We further reject BIC's request to limit discovery of similar accident information to a two year time period. We will remand to the district court with instructions to issue a protective order limiting the use of discovery of confidential design, safety and quality test information for use in this litigation only.[7]
 
 
 
 *
 Honorable Edward Dumbauld of the United States District Court for the Western District of Pennsylvania, sitting by designation
 
 
 [1]
 Specifically, BIC requested the court:
 to grant its motion for a protective order forbidding the Plaintiff or his attorneys from divulging any of the material obtained from Defendant through discovery in this case that is confidential, proprietary or a trade secret or which relates to other similar claims against BIC Corporation to any persons or firms not directly connected with the preparation of this action for trial or to use such information in any way except in connection with this law suit, and further requests that a bond be posted for enforcement of the protective order.
 Joint App. at 225a (emphasis added).
 
 
 [2]
 We have condensed much of the procedural history in this case for brevity's sake. The magistrate's orders which were appealed also included several motions for reconsideration made by BIC after the motions for protective orders were denied. In addition, both Philadelphia Newspapers, Inc. and Smith filed motions for protective orders before the magistrate requesting a directive that the noticed depositions not be taken
 
 
 [3]
 BIC had also filed a Petition for Writ of Mandamus for review of the district court's order at the same time as this appeal. The petition was denied July 20, 1988. Since we have concluded that we have jurisdiction to hear the appeal under the collateral order doctrine, we need not, therefore, reach the vehicle of the petition for writ of mandamus
 
 
 [4]
 Rule 26(c) provides in pertinent part:
 (c) Protective Orders. Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: ... (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way;....
 
 
 [5]
 Neither party to these appeals has disputed the magistrate's application of Pennsylvania's law of trade secrets to this action. We therefore follow the district court and magistrate in applying Pennsylvania law, see Smith v. BIC, 121 F.R.D. 235, 239 n. 2 (E.D.Pa.1988). We note, however, that a conflicts of law interest analysis would lead to the conclusion that Pennsylvania has a strong interest in having its law applied to protect plaintiff-residents injured by allegedly defective products in Pennsylvania
 
 
 [6]
 Both Burke and Philadelphia Newspapers, Inc. rely on the First Amendment and the Pennsylvania Shield Law as protection against compelled disclosure of confidential sources to argue that BIC acted improperly. In Coughlin v. Westinghouse Broadcasting & Cable Inc., 780 F.2d 340 (3d Cir.1985), cert. denied, 476 U.S. 1187, 106 S.Ct. 2927, 91 L.Ed.2d 554 (1986), we recognized the substantial scope of the Pennsylvania Shield Law, 42 Pa.Cons.Stat.Ann. Sec. 5942 (Purdon 1982) in protecting reporters from being compelled to disclose confidential sources or material. The statute, however, does not act as a complete bar to the discovery process--where relevant--in the sense that it does not forbid the issuance of a notice of deposition and voluntary disclosure
 
 
 [7]
 For the ease and convenience of the district court we will enumerate the numbers of the Interrogatories and Requests for Production to which the protective order will apply: Interrogatories # § 23 (except patents), 30, 33, 37, 38, 43-49, 55, 56, 59-61 and Requests for Production # § 17 (except patents), 21 (except patents), 27, 28, 29, 32, 33, 34