**Mark HOTCHKISS, et ux., Plaintiffs,**

v.

**SEARS, ROEBUCK & CO., INC., et al., Defendants.**

**No. CV–89–1634.**

United States District Court,
M.D. Pennsylvania.

Sept. 6, 1991.

Peter H. Bouman, Binghamton, N.Y., for plaintiffs.

Warren E. Voter, Sweeney, Sheehan & Spencer, Philadelphia, Pa., Joseph DiRienzo, Fanwood, N.J., for defendants Sears, Roebuck and Co. and Emerson Electric Co.

## MEMORANDUM

McCLURE, District Judge.

### BACKGROUND

Plaintiffs Mark and Colleen Hotchkiss filed this products liability action against Emerson Electric Company ("Emerson") and Sears, Roebuck, & Co., Inc. ("Sears") to recover for injuries allegedly sustained by Mark Hotchkiss while operating a Craftsman 10″ radial arm saw sold by Sears and manufactured by Emerson.

Trial is scheduled to commence September 17, 1991. Before the court are: (1) a motion (Record Document No. 46, filed August 1, 1991) by defendants for partial reconsideration of the order of July 29, 1991; and (2) a motion (Record Document No. 51, filed August 7, 1991) by defendants to compel the reproduction of plaintiffs' videotape exhibits.

For the reasons discussed below, we will enter an order: (1) granting partial reconsideration of our prior order but denying the relief sought; and (2) granting in part defendants' motion to compel reproduction of plaintiffs' videotape exhibits.

### DISCUSSION

*Defendants' motion to limit plaintiffs' expert testimony*

Defendants seek to compel the deposition of plaintiffs' experts or, in lieu thereof, the production of detailed answers to expert interrogatories or expert reports. We ruled on this request previously, and defendants have requested reconsideration. We will reconsider the ruling, because, as defendants point out, our prior order was issued before their responsive brief was

filed. Having reconsidered, we stand by our original ruling.

█ The chief point which defendants stress in their responsive brief is an alleged understanding with plaintiffs' counsel that an expert report would be produced. They base this understanding on a letter dated May 22, 1991 from defense counsel, Warren E. Voter, Esq., to plaintiffs' counsel, which states, in part: "I understand that it is your position that you cannot provide us with an expert report until the Discovery which is outstanding has been answered. We expect to be able to provide this to you shortly, following which I assume we will be receiving the reports of your liability experts." Defendants argue that since plaintiffs did not respond to this letter, they should be bound by the "implied" promise that expert reports would be forthcoming.

This argument ignores the fact that plaintiffs had already told defendants in a letter sent a month earlier that they had no expert reports. There is nothing to suggest that plaintiffs' situation had changed and that a month later they promised the production of such reports. We, therefore, decline to change our ruling on this issue.

*Defendants' motion to limit plaintiffs' expert testimony*

Defendants seek a protective order against disclosure of certain materials requested by plaintiffs at the Mark Gilliland deposition and have submitted the materials in question to the court for *in camera* review. Fed.R.Civ.P. 26.[1] They argue that the materials plaintiffs seek contain trade secrets and proprietary information which should be protected from disclosure.

The courts "have not given trade secrets automatic and complete immunity against disclosure, but have in each case weighed their claim against the need for disclosure." *Smith v. BIC Corp.,* 869 F.2d 194,

199 (3d Cir.1989). In *Smith, supra,* the Court of Appeals for the Third Circuit listed six factors to be considered in deciding whether certain information is a trade secret:

(1) the extent to which the information is known outside of the owner's business;

(2) the extent to which it is known by employees and others involved in the owner's business;

(3) the extent of measures taken by the owner to guard the secrecy of the information;

(4) the value of the information to the owner and to his competitors;

(5) the amount of effort or money expended by the owner in developing the information; and

(6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Smith v. BIC Corp., supra,* 869 F.2d at 200, citing *SI Handling Systems, Inc. v. Heisley,* 753 F.2d 1244, 1256 (3d Cir.1985).

█ The documents which defendants claim should be protected as trade secrets fall into two categories: (1) records pertaining to research and development of the 1983 Stackhouse guard by Emerson; and (2) the 1989 "Metzger" report summarizing a study of accident injury patterns. As the party seeking the protective order, defendants bear the burden of proving that the materials should be protected from disclosure. We find that that burden has not been met and that the conditions imposed by the accompanying confidentiality order will adequately guard against the concerns defendants have raised about disclosure of the materials to plaintiffs and their experts.

With respect to information pertaining to testing and research on the Stackhouse guard, defendants' concerns are significantly diminished by the fact that the guard was sold to the public on a limited

---

1. Rule 26(c) provides, in relevant part:
    Upon motion by a party ... from whom discovery is sought, and for good cause shown, the court in which the action is pending ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
    (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way....

basis in the early 1980s. Although defendant subsequently recalled the guards sold and went to some lengths to see that all of the guards disseminated to the public were retrieved, that does not alter the fact that it was released and persons outside the company had access to, or could have gained through analysis or research, the information which defendants now seek to keep so closely guarded. It is also noteworthy that information much the same as that at issue here was disclosed to the opposition in a case pending before the United States District Court for the Eastern District of Pennsylvania. *Carotenuto v. Emerson Electric Company*, No. 89–6298 (E.D.Pa. Dec. 28, 1990), (available on WESTLAW at 1990 WL 239199), (Noting that the court had entered a confidentiality order, the district court ruled that plaintiff was entitled to information concerning "defendant's manufacturing cost of an auxiliary tool guard device, as well as the results of any tests performed on such a device.")

The Metzger report is a compilation of statistics on accidents involving radial arm saws. This is information which is available to virtually anyone who wishes to take the time and trouble to compile it. Although defendants expended some time and resources in compiling it and interpreting the results, we do not find that this is the sort of information which is privileged absolutely against disclosure to plaintiffs.

■ Defendants also seek protection of a separate set of documents which they claim are protected by attorney/client privilege. We agree that the two letters in question contain privileged communications between an Emerson agent and counsel, and are, therefore, not discoverable. 42 Pa.C.S.A. § 5928 and Fed.R.Civ.P. 26(b)(1).

*Defendants' motion to compel reproduction of plaintiffs' videotape*

■ Defendants seek a copy of two videotapes which plaintiffs made in preparation for trial which depict the operation of the radial arm saw with a guard attached. Plaintiffs have shown the videotapes to defense counsel, but have declined to provide them with a copy so that it may be analyzed by their experts. Defendants state that they want to analyze the tapes because they are suspicious of "gaps" in one of the tapes during which the camera was turned off and then reactivated. Plaintiffs have stated that this was done to avoid boring the jury with long sequences of inactivity while preparations were underway for the next phase of the demonstration. They also state that they have prepared a third videotape which runs continuously and that they are willing to provide defendants with a copy of the same. Defendants insist on receiving a copy of the first two videotapes.

We will direct counsel to provide defendants with a copy of whatever videotapes they plan to present at trial.

## ORDER

For the reasons stated in the accompanying memorandum, IT IS ORDERED THAT:

1. Defendants' motion (Record Document No. 46, filed August 1, 1991) for partial reconsideration of the order of July 29, 1991 is granted. We have reconsidered that order and stand by the original ruling that defendants are not entitled to depose plaintiffs' experts or require the production of an expert report. Defendants are directed to produce for plaintiffs documents responsive to items three, five, seven and eight (See the list attached as exhibit "A".) requested at the Gilliland deposition, subject to the conditions set forth in paragraph two. Defendants are not required to produce documents responsive to item one on the list.

2. Defendants' production of documents responsive to items three, five, seven and eight on the attached list is subject to the following conditions:

(a) The term "covered persons" as used in this order refers to: the court; plaintiffs' counsel, associates, assistants or other employees in his law firm; and experts retained by plaintiffs. It does not include any other persons.

(b) Plaintiffs' counsel may disclose the documents and their contents only to covered persons, and may not file copies of them

or recite the contents in any filed document without leave of court.

(c) The documents and their contents may not be revealed to, or discussed with, or in the presence of, any one other than covered persons. Covered persons are prohibited from revealing the contents of the documents, or any portion thereof, to any one who is not a covered person under this order.

(d) Plaintiffs' counsel is permitted to make no more than two copies of the documents for use by covered persons. All such copies shall be returned to defense counsel no later than the conclusion of this case. No other persons may make copies of the documents for any purpose.

(e) This protective order shall remain in effect in perpetuity or until modified by a subsequent order.

(f) If plaintiffs believe any portion of the documents or the information they contain to be admissible at trial, plaintiffs shall make an offer of proof outside the hearing of the jury before alluding to the existence of any such evidence and the court will make a ruling at that time as to the admissibility of the evidence at issue.

(g) Plaintiffs' counsel shall advise all covered persons given access to the documents of the terms and conditions of this order, explain to them the prohibitions imposed on them, and provide them with a copy of this order. Plaintiffs' counsel shall keep a record of all persons given access to the documents, and shall have all covered persons given access to the documents or information they contain sign a statement acknowledging their understanding of the confidentiality conditions imposed.

(h) Counsel shall have all such persons sign a statement which reads as follows:

I understand that my access to these documents and my right to review them are circumscribed by the conditions of the confidentiality order issued September 5, 1991, and by signing this statement, I acknowledge that I have read the order, or had its contents explained to me by an attorney, and that I understand the terms and conditions it imposes. I agree to abide by all such terms and conditions.

(i) Anyone refusing to sign the statement shall be denied access to the documents and their contents.

3. Defendants' motion (Record Document No. 51, filed August 7, 1991) to compel the reproduction of plaintiffs' videotape exhibits is granted in part. Plaintiffs are directed to provide defendants with a copy of those videotapes which they plan to introduce at trial within ten days from the date of this order.

## EXHIBIT A

## REQUESTS MADE AT THE DEPOSITION OF EMERSON ELECTRIC COMPANY REPRESENTATIVE, MICHAEL GILILLAND

1. Mr. Gililland's memorandum regarding his tabulation of market studies concerning radial arm saws and who used them. (Request made on Page 34 of Mr. Gililland's deposition.)

2. Jack Hyde report regarding pattern of injuries associated with radial arm saws done in mid–1980s. (p. 56)

3. Michael Gililland's report regarding pattern of injuries associated with radial arm saws done in 1989. (p. 56)

4. Barney Brundidge's report regarding how people were injured with radial arm saws done approximately 1984. (p. 69)

5. Records of testing done on the Stackhouse guard. (p. 92)

6. Owner's Manual for radial arm saws with the Stackhouse guard. (p. 95)

7. Documentation regarding hazards associated with the use of the Stackhouse guard on radial arm saws. (p. 99)

8. Approximately 160 follow-up reports/interviews of purchases of radial arm saws with the Stackhouse guard. (p. 102)

9. Requested one Stackhouse guard for inspection. (p. 103)

10. Documentation concerning testing done by Emerson upon the Batson patented guard and/or the Pyle patented guard. (p. 121)

11. Records and attempts to develop guards to guard the lower portion of the radial arm saw blade. (p. 168)

12. Owner's Manuals for 10″ radial arm saws manufactured by Emerson from 1970 to 1979. (p. 182)