Nina ROSSI, Appellant

v.

State of NEW JERSEY; John
P. McCarthy, Jr.

No. 01–2739.

United States Court of Appeals,
Third Circuit.

Submitted April 22, 2002.

Decided June 6, 2002.

Before SCIRICA, RENDELL, and NOONAN,* Circuit Judges.

## OPINION OF THE COURT

SCIRICA, Circuit Judge.

This is a gender discrimination case brought under 42 U.S.C. §§ 1981, 1983, Title VII, 42 U.S.C. § 2000e–5(f)(3) and the New Jersey Law Against Discrimination, NJSA §§ 10:5–12.a, e.[1] On appeal, plaintiff Nina Rossi (a female attorney) challenges an order forbidding tape recording of a psychiatric examination under Fed.R.Civ.P. 26(c) and contends that summary judgment should not have been entered in favor of defendants.[2]

We will affirm.

## I.

We have jurisdiction to hear this appeal under 28 U.S.C. § 1291.

## II.

We review the denial of a protective order under Fed.R.Civ.P. 26(c) "for errors of law and use a clearly erroneous stan-

dard with regard to findings of fact." *Smith v. BIC Corp.*, 869 F.2d 194, 199 (3d Cir.1989). We exercise de novo review over a grant of summary judgment. *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 318 (3d Cir.2000).

## III.

Plaintiff Nina Rossi is a female attorney who was employed for ten years with the State of New Jersey's Administrative Office of the Courts. Rossi started at AOC as a "Legal Assistant 4" and during her tenure, she was promoted twice upon the recommendation of her supervisor John McCarthy.[3] At the time of her resignation on March 3, 1998, she held the position of Assistant Chief of Criminal Court Services.

On February 18, 1997, Rossi filed a complaint alleging gender discrimination with the Equal Employment Opportunity office in the AOC.[4] Shortly after filing this in-house complaint, Rossi was hospitalized for treatment of psychiatric distress allegedly caused by workplace stress. She later filed another administrative complaint with

---

\* The Honorable John T. Noonan, Jr., United States Circuit Judge for the Ninth Judicial Circuit, sitting by designation.

1. Specifically, Rossi contends (1) she was denied equal employment opportunity by the State of New Jersey on the basis of sex in violation of Title VII; (2) defendant John McCarthy (a supervisor) denied her equal protection in violation of 42 U.S.C. § 1981; (3) the State of New Jersey retaliated against plaintiff for protesting the alleged denial of equal protection in violation of Title VII; (4) McCarthy took reprisals against plaintiff in violation of 42 U.S.C. § 1983; (5) the State of New Jersey (aided and abetted by McCarthy) denied plaintiff equal work conditions and equal compensation in violation of the NJLAD, NJSA §§ 10:5–12.a, e; and (6) the State of New Jersey and McCarthy retaliated against Rossi in violation of the NJLAD, NJSA § 10:5–12.d. Counts 5 and 6 were dismissed

as to the state of New Jersey because the Eleventh Amendment protects states from suit in federal court.

2. For the first time on appeal, Rossi also contends she can prove disparate pay vis-a vis her *male* comparators under the Equal Pay Act, 29 U.S.C. § 206(d). Generally, we do not review issues raised for the first time at the appellate level, and we do not choose to exercise our discretion to do so here. *Gardiner v. V.I. Water & Power Auth.*, 145 F.3d 635, 646 (3d Cir.1998).

3. Rossi was approved to receive another 6% merit based salary increase in March 1998, but she left AOC before this raise was implemented.

4. Ultimately, the EEO investigator issued a report concluding there was no basis for Rossi's claims of discrimination.

the New Jersey Division of Civil Rights.[5] In these complaints, she alleged that the women working under McCarthy were not treated equally as a group and that she was subjected to disparate treatment because of her gender. She alleged that because of her gender: (1) a research position was removed from her supervision; (2) she was not paid enough relative to other members of the Criminal Practice Division; and (3) her unit was not afforded equal recognition. Rossi also claimed that Mary DeLeo's promotion to Chief instead of herself was a "blatant act of reprisal" for filing an in-house EEO charge.[6] Rossi resigned on March 3, 1998, allegedly "recognizing that her continued employment under McCarthy's supervision was no longer tenable."

On July 9, 1999 Rossi filed suit against McCarthy and the State of New Jersey. She claimed that as a result of her treatment at work she suffered "humiliation, mental pain, anguish, lost income, lost future income, and reduced enjoyment of life." In the course of discovery, defendants retained a psychiatrist as a medical expert and wanted to conduct an independent medical examination of Rossi under Fed.R.Civ.P. 35. Rossi sought a Fed.R.Civ.P. 26(c) protective order permitting her to tape record the examination and/or allowing her the presence of her own therapist during the examination. The Magistrate Court denied this order on January 19, 2001 for failure to demonstrate "good cause" and the District Court affirmed.[7]

Before the planned psychiatric examination could be scheduled, the District Court granted summary judgment in favor of the defendants on May 24, 2001, because Rossi "failed to show that her gender was ever a consideration in defendants' employment decisions or that defendants' articulated reasons for the employment decisions made are only a pretext."

This timely appeal followed.

## IV.

 Title VII and the NJLAD prohibit employers from engaging in gender discrimination in employment. In order to prevail on a pretext theory, a plaintiff

---

5. This complaint was cross-filed with the Equal Employment Opportunity Commission. On May 7, 1999, the EEOC issued Rossi a "right to sue" letter.

6. Rossi viewed herself as the "natural successor" for this position.

7. Because we affirm the grant of summary judgment, we need not reach the protective order issue. Nonetheless, we believe the District Court did not err. Rule 26(c) provides: "Upon motion by a party ... and for good cause shown, the court ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense...." Good cause is shown "by demonstrating a particular need for protection." *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir.1986). The party seeking a protective order bears the burden of persuasion and "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning do not satisfy the Rule 26(c) test." *Id.*

Here, Rossi produced the declaration of her therapist who stated the defense psychiatrist's examination posed an "unquantifiable but non-trivial risk" and "could be emotionally disruptive." She also contended that the protective order should have been granted because (1) New Jersey law allows individuals to secretly tape record conversations; and (2) tape recording enhances the reliability of the truth finding function. Defendants produced the declaration of a psychiatrist who stated he opposed tape recording of plaintiff's evaluation because such recordings disrupt "open doctor-patient communication and the establishment of a rapport with the patient." Although we endorse no general procedure in this particular subject matter area, we believe the District Court acted well within its discretion in affirming the Magistrate Court's Order denying the motion for failure to show "good cause."

must establish a prima facie case of discrimination. *Goosby*, 228 F.3d at 318 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)); *Peper v. Princeton Univ. Bd. of Trustees*, 77 N.J. 55, 81–84, 389 A.2d 465 (1978) (adopting the *McDonnell Douglas* burden-shifting framework for analysis of NJLAD cases) *cited in Mogull v. CB Commercial Real Estate Group, Inc.*, 162 N.J. 449, 462, 744 A.2d 1186 (2000). Once a prima facie case[8] has been established, the employer "must come forward with a legitimate, non-discriminatory reason for the adverse employment decision." *Goosby*, 228 F.3d at 318. If the employer can proffer a legitimate, nondiscriminatory reason for its actions, the plaintiff must demonstrate that the proffered reason was merely a pretext for unlawful discrimination. *Id.; Starceski v. Westinghouse Electric Corp.*, 54 F.3d 1089, 1095–96 n. 4 (3d Cir.1995) ("At all times the burden of proof or risk of non-persuasion, including the burden of proving 'but for' causation or causation in fact, remains on the employee."). The District Court concluded that Rossi failed to show that her gender "was ever a consideration in defendants' employment decisions or that defendants' articulated reasons for the employment decisions made are only a pretext...." We agree.

Here, the comparators cited by Rossi as having higher salaries were all significantly more experienced.[9] AOC staff from other units (and not just Rossi's) were laid off as a result of budget constraints. In addition, a salary freeze was instituted from 1990–1994. Non-management employees (like the comparators cited) were not affected by the salary freeze, whereas management employees (like Rossi) were affected by the freeze. Moreover, during Rossi's tenure at AOC, McCarthy submitted 17 "special" reclassification requests, and 12 of these requests were for female employees. Because Rossi failed to demonstrate gender was a consideration in any of defendant's alleged adverse employment actions, we believe summary judgment was properly entered for the defendant on counts 1 and 5 (alleging Title VII and NJLAD violations).

## V.

For the same reasons, we conclude that summary judgment was properly entered for the defendant on count 2 (alleging a § 1981 violation). *See Stewart v. Rutgers*, 120 F.3d 426, 432 (3d Cir.1997) (stating that application of the *McDonnell Douglas* analytical framework is applicable to plaintiff's §§ 1981 and 1983 discrimination allegations).

## VI.

■ We also agree that summary judgment was properly entered on Counts 3, 4, and 6 (alleging retaliatory conduct by the defendants) because Rossi "failed to establish a retaliatory motive for defendants or that defendants' articulated reasons for the employment decisions made are only a pretext." As the District Court noted, the AOC in-house investigation of plaintiff's complaint found no discrimination. *Id.* Rossi characterized the appointment of

---

8. A prima facie case is made when plaintiff establishes: (1) she was a member of a protected class; (2) she was qualified for the position sought; and (3) nonmembers of the protected class were treated more favorably. *Goosby*, 228 F.3d at 318. For purposes of this appeal, we will assume *in arguendo* that Rossi established a prima facie case of discrimination.

9. Rossi cited three males and one female as comparators for her claim; two of these males were paid more than she was, but one male was paid less.

Mary DeLeo as "Acting Chief" as a "blatant" retaliatory act, but Rossi was on sick/maternity leave when the position was created during an AOC reorganization. Also, DeLeo had twelve more years of experience than Rossi. When the permanent Chief position was posted, Rossi did not even apply.

We note that defendants were very accommodating of Rossi's needs after she filed discrimination claims because they permitted her to work from home when she experienced problems with her pregnancy. On McCarthy's recommendation, Rossi was allowed to tele-commute from mid June until October 1997 so that she might conserve use of sick-leave and maintain an income.

We see no error.

## VII.

For these reasons, we will affirm the judgment of the District Court.