351 A.2d 273

**John T. FELMLEE et al.**

v.

**Larry L. LOCKETT and Lockett
Industries, Appellants.**

Supreme Court of Pennsylvania.

Argued May 6, 1975.

Decided Jan. 29, 1976.

2

4

---

Larry F. Knepp, Lewistown, for appellants.

Robert B. Brugler, Brugler & Levin, Lewistown, for appellees.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY and NIX, JJ.

## OPINION

JONES, Chief Justice.

Appellees, John T. Felmlee, Walter J. Felmlee and Felmlee Enterprises, Inc., filed a complaint in equity to enjoin the appellants, Larry L. Lockett and Lockett Industries from using certain formula, processes and molds pertaining to the manufacture of soft fishing lures, alleging that they were trade secrets. After holding lengthy hearings, the chancellor concluded that appellees' lures were manufactured by use of a secret process, formula and mold giving the lures unique form, color, structure and soft texture which appellants used in contravention of their duty of nondisclosure arising from their confidential relationship with the appellees.

Appellee, John T. Felmlee, has been an avid Pennsylvania fisherman for years. In 1954, he set up a family operated business which eventually became Felmlee Enterprises, Inc. Felmlee Enterprises, Inc., operates out of Lewistown, Pennsylvania and is engaged in the manufacture of fishing lures. Through John Felmlee's efforts, Felmlee Enterprises, Inc., began to produce soft fishing lures which were of a different chemical composition and design from those on the market. In recognition of these *design differences* the United States Patent Office issued a patent to John Felmlee in 1957, covering four

different patentable ideas which go into the design of any Felmlee lure.

In addition to the unique design of the Felmlee soft lures the appellees' lures have a unique texture. Through a process of experimentation with plastics and other additives, John Felmlee was able to produce a secret chemical formula for soft plastic which gives his lures unique qualities such that the Felmlee lure has a soft texture and natural fish coloring that will not scale off. Although the separate ingredients for the formula can be purchased on the open market, it is the proper proportion of such ingredients in relation to each other which give Mr. Felmlee's soft plastic lures their unique characteristics. John Felmlee never sought any patent protection for his chemical formula for soft plastic.

John Felmlee ran the business exclusively from 1954 until he sold [1] his business to his son, Walter J. Felmlee, in August of 1965. During the time that John Felmlee owned the business, the formula for his soft plastic lures was kept locked in John Felmlee's office, and no one had access to it.

The appellant, Larry L. Lockett, is the son-in-law of John T. Felmlee. Mr. Lockett began to work for Felmlee Enterprises, Inc., sometime in 1962. During the period of time from 1962 to 1965, when John Felmlee exclusively owned and operated the business, Larry Lockett operated the molding machines and helped assemble lures. During this time he did not have knowledge of or access to the chemical formula for John Felmlee's soft plastic.

In October of 1965, Walter J. Felmlee began to run the business. Appellant, Larry Lockett continued to work for Walter J. Felmlee under the part-time supervision of John Felmlee. Walter Felmlee eventually placed Mr. Lockett in charge of manufacturing Felmlee fishing

1. John also sold to Walter his secret formula for soft plastics and his design patent, however, John retained a financial interest in the business.

lures, and was at all times supervising the running of the business for the Felmlees. According to appellee, John Felmlee, he told Mr. Lockett the secret chemical formula for soft plastic lures sometime after Mr. Lockett began to work for Walter. Apparently, this was done in the normal course of the business to enable Mr. Lockett to better function as plant manager. In May of 1966, Mr. Lockett left the appellees' business and stayed out of the fishing lure business until 1968 when he began to manufacture his own fishing lures under the name Lockett Industries.[2]

The chancellor in his decree nisi, permanently enjoined the appellants from making or selling "any soft fishing lures of the design, color, composition or texture like or similar to the [appellees'] lures known as the 'Dace Minnow,' 'Butter-Chub,' or 'Skip-Jack.'" Additionally, the chancellor's decree restrained the appellants for a period of four (4) years from making or selling any soft lures like or similar to appellees' lures known as the "Helgramite" and "Crayfish." He also awarded the appellees three thousand dollars ($3,000.00) for partial reimbursement for costs and expenses incurred by them during the litigation.

In their exceptions to the chancellor's decree nisi the appellants raised two issues; first, the appellants challenged the sufficiency of the evidence; and second, the appellants alleged that the chancellor failed to show what trade secrets were acquired by the appellants. The appellants' exceptions were found to be without merit and the chancellor's decree was made final. This appeal followed.[3]

Appellants present five issues for this Court's consideration. Initially the appellants raise the question

---

2. The chancellor found that the Lockett lures were similar in structure, texture, color and design to the Felmlee lures.

3. Pursuant to Act of 1970, July 31, P.L. 673, No. 223, Art. II, § 202(4), 17 P.S. § 211.202(4) (1975–76 Supp.).

of whether injunctive relief may be granted since the appellees failed to set out the specific formula for their soft plastic which they alleged to be a trade secret. We are restrained, however, from addressing this issue by our decision in *Dilliplaine v. Lehigh Valley*, 457 Pa. 255, 322 A.2d 114 (1974), since the appellants failed to properly raise this issue before the court below. In substance, appellants' second, third and fourth arguments question the sufficiency of the evidence. Finally, appellants' fifth issue questions whether the chancellor properly found that the Felmlees' formula for plastic and their lure designs were trade secrets under the facts of this case.

It is fundamental that this Court will not overturn a chancellor's factual conclusions if they are supported by competent evidence. *Hatalowich v. Redevelopment Authority of City of Monessen*, 454 Pa. 481, 312 A. 2d 22 (1973); *Silver v. Silver*, 421 Pa. 533, 219 A.2d 659 (1966). This is especially the case where the credibility of the witnesses must be determined. *Hankin v. Goodman*, 432 Pa. 98, 246 A.2d 658 (1968). On the other hand, it is equally well established that the chancellor's conclusions, whether of law or fact, being no more than his reasoning from the underlying facts, are reviewable. *Van Products Co. v. General Welding & Fabricating Co.*, 419 Pa. 248, 213 A.2d 769 (1965); *Hoffman v. Rittenhouse*, 413 Pa. 587, 198 A.2d 543 (1964).

The gravamen of the appellees' cause of action is the abuse of confidence by Larry Lockett who, as a trusted employee, allegedly misappropriated the secret formula and molds of the Felmlees and used them to produce and market competing products manufactured by Lockett Industries. That the state courts have the power to enjoin the use of a trade secret in a proper case is well established by our prior cases. *Capital Bakers, Inc. v. Townsend*, 426 Pa. 188, 231 A.2d 292 (1967); *Van Products Co. v. General Welding & Fabricating Co.*, 419 Pa. 248, 213 A.2d 769 (1965).

8

A court of equity will protect an employer from the unlicensed use of his trade secrets by an ex-employee provided the employee entered into an enforceable covenant so restricting his use, *Fralich v. Despar*, 165 Pa. 24, 30 A. 521 (1894), or was bound to secrecy by virtue of a confidential relationship existing between the employer and his employee. *Pittsburgh Cut Wire Co. v. Sufrin*, 350 Pa. 31, 38 A.2d 33 (1944). Where, however, an employer has no legally protectable trade secret, an employee's "aptitude, his skill, his dexterity, his manual and mental ability, and such other subjective knowledge as he obtains while in the course of his employment, are not the property of his employer and the right to use and expand these powers remains his property unless curtailed through some restrictive covenant entered into with the employer." 350 Pa. at 35, 38 A.2d at 34. Since no restrictive covenant was executed between the parties in this case, we must determine whether the appellees have legally protectable trade secrets and whether or not a confidental relationship existed between Lockett and the Felmlees binding Lockett to a duty of nondisclosure.

This Court in *Macbeth-Evans Glass Co. v. Schnelbach*, 239 Pa. 76, 86 A. 688 (1913), set out the prerequisites for recovery upon a cause of action alleging misappropriation of trade secrets. "To be entitled to equitable relief, the burden was on [the employer] to show: (1) that there was a trade secret, or, as in the case at bar, a secret process of manufacture; (2) that it was of value to the employer and important in the conduct of his business; (3) that by reason of discovery or ownership the employer had the right to the use and enjoyment of the secret; and (4) that the secret was communicated to [the employee] while he was employed in a position of trust and confidence, under such circumstances as to make it inequitable and unjust for him to disclose it to others, or to make use of it himself, to the prejudice of his employer." 239 Pa. at 87, 86 A. at 691.

In analyzing whether both the appellees' chemical formula for plastic and their molds are trade secrets this Court must adhere to the definition of trade secret as stated by the Restatement of Torts § 757 comment b at 5 (1939). "A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and gives him an opportunity to obtain an advantage over competitors who do not know or use it." *Van Products Co. v. General Welding & Fabricating Co.,* 419 Pa. at 258–59, 213 A.2d at 775. Further, we have held that "trade secrets" which will be so protected must be *particular* secrets of the complaining employer and not general secrets of the trade in which he is engaged. *Capital Bakers, Inc. v. Townsend,* 426 Pa. at 192, 231 A.2d at 294. *See Morgan's Home Equipment Corp. v. Martucci,* 390 Pa. 618, 136 A.2d 838 (1957).

The opinion of the court below clearly indicates that the appellees' chemical formula for soft plastic was a trade secret which meets the requisites of the Restatement test. The chancellor found that the formula "involved additional additives blended and mixed in proper proportions to produce, when heated, a satisfactory texture, softness and workability of the material." The chancellor specifically found that the appellees' lures were manufactured by the use of this secret formula, that the trade secret was a particular trade secret as opposed to a general one and that the secret had real value. Further, the chancellor found that the appellant was employed by appellees in a position of trust and confidence and as a result gained knowledge of the appellees' secret formula.

After a review of the record we believe that the chancellor properly found that the appellees sustained their burden under *Macbeth-Evans Glass Co. v. Schnelbach, supra,* as to their chemical formula for soft plastic.[4] The record indicates that the appellees' trade

---

4. *See also Belmont Laboratories, Inc. v. Heist,* 300 Pa. 542, 151 A. 15 (1930); *Pressed Steel Car Co. v. Standard Steel Car Co.,* 210 Pa. 464, 60 A. 4 (1904).

secret was developed by them and that it was not a matter of public knowledge. Witnesses for both the appellees and the appellants acknowledged that the Felmlee soft plastic lures were made by use of a secret chemical formula. Appellees therefore met their burden of establishing that they were the owners of a trade secret. *Pittsburgh Cut Wire Co. v. Sufrin*, 350 Pa. 31, 38 A.2d 33 (1944). The record further substantiates the chancellor's conclusion that Mr. Lockett gained knowledge of the appellees' chemical formula while in the appellees' employ and in a position of trust and confidence.

■ We believe with respect to appellees' chemical formula for soft plastic that this is clearly a proper case to afford appellees equitable relief. As this Court said in *Wexler v. Greenberg*, 399 Pa. 569, 160 A.2d 430 (1960), "the trust and confidence upon which legal relief is predicated stems from the instance of the employer's *turning over to the employee* the pre-existing trade secret. It is then that a pledge of secrecy is impliedly extracted from the employee, a pledge which carries with him even beyond the ties of his employment relationship." 399 Pa. at 577–78, 160 A.2d at 434.

■ Our review of the record also indicates, however, that the chancellor erred in concluding that the facts established that the appellees' designs and molds are legally protectable trade secrets. The appellee, John Felmlee, admitted that the molds for those lures were not trade secrets. The only basis at all for a finding that the appellees used a trade secret in the design of these types of lures was the appellee, John Felmlee's testimony that some or all of these lures made use of ideas for which the appellee was awarded a patent. 35 U.S.C. § 112 provides that: "The specification [required to be appended to a patent application] shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms

as to enable any person skilled in the art to which it pertains . . . to make and use the same . . . ." The result of this section and the very nature of the patent publication have been consistently held to work a destruction of any trade secret disclosed therein. We are thus precluded from awarding the appellees equitable relief on this point. *Van Products Co. v. General Welding & Fabricating Co., supra.*[5]

Accordingly, the decree of the chancellor must be modified so as to restrain the appellants from manufacturing soft fishing lures which are composed of plastic material of the same chemical formula as used in the soft plastic lures of the appellees.

The decree of the Court of Common Pleas of Mifflin County is modified in accordance with this opinion, and as modified affirmed. Costs to be paid by the appellants.

MANDERINO, J., did not participate in the consideration or decision of this case.

**5.** *Kinnear-Weed Corp. v. Humble Oil & Refining Co.,* 150 F.Supp. 143 (E.D.Tex.1956), aff'd 259 F.2d 398 (5th Cir. 1958); *Darsyn Laboratories, Inc. v. Lenox Laboratories, Inc.,* 120 F.Supp. 42 (D. N.J.1954), aff'd on opinion below, 217 F.2d 648 (3d Cir. 1954); *Ferroline Corp. v. General Aniline & Film Corp.,* 207 F.2d 912 (7th Cir. 1953); *Schreyer v. Casco Products Corp.,* 190 F.2d 921 (2d Cir. 1951), cert. denied, 342 U.S. 913, 72 S.Ct. 360, 96 L.Ed. 683 (1952); *Conmar Products Corp. v. Universal Slide Fastener Co., Inc.,* 172 F.2d 150 (2d Cir. 1949); *Mycalex Corp. of America v. Pemco Corp.,* 159 F.2d 907 (4th Cir. 1947); *Picard v. United Aircraft Corp.,* 128 F.2d 632 (2d Cir. 1942); *Speaker v. Shaler Co.,* 87 F.2d 985 (7th Cir. 1937); *Robine v. Apco, Inc.,* 227 F. Supp. 512 (S.D.N.Y.1964); *Tempo Instrument, Inc. v. Logitek, Inc.,* 229 F.Supp. 1 (E.D.N.Y.1964); *Great Lakes Carbon Corp. v. Continental Oil Co.,* 219 F.Supp. 468 (W.D.La.1963); *Lyon v. General Motors Corp.,* 200 F.Supp. 89 (N.D.Ill.1961); and, *Carter Products, Inc. v. Colgate-Palmolive Co.,* 130 F.Supp. 557 (D.Md. 1955).