546 A.2d 119

**TYSON METAL PRODUCTS, INC., Appellee,**

v.

**Marcie McCANN, an Individual, and Stainless Manufacturing, Inc., a Corporation, Appellants.**

Superior Court of Pennsylvania.

Argued May 5, 1988.

Filed Aug. 15, 1988.

Ralph A. Finizio, Pittsburgh, for appellants.

Harold Gondelman, Pittsburgh, for appellee.

Before CIRILLO, President Judge, and BECK and POPOVICH, JJ.

POPOVICH, Judge:

This is an appeal from the order of the Court of Common Pleas of Allegheny County, sitting in equity, granting a preliminary injunction against the appellant/Marcie McCann on motion of the plaintiff/Tyson Metal Products, Inc. We reverse.

The record discloses that a hearing was conducted on August 11–12, 1988, to assess the plaintiff's motion for a preliminary injunction. At the proceeding, the vice-president of Tyson Metal Products, Inc., Harvey Tyson, appeared and testified in substance that, during McCann's employ with the plaintiff, she had access to prices charged by suppliers to the plaintiff for some 6–20 vital items which went into proposals ("bids") submitted to its largest customer, Burger King Corporation, which constituted 20–30% of its gross sales of $12,000,000.00 a year in its manufacture of food service equipment.

It was Mr. Tyson's contention that, with McCann securing employment with its main rival in the business, the appellant/Stainless Manufacturing, Inc., her disclosure of the "price list", accumulated over the years through adroit negotiations to afford an advantage, would tip the scales in favor of Stainless and negate whatever leverage the plaintiff had over its competition. More particularly, it was the position of the plaintiff that because of the lower price it was able to secure from a supplier on a product, it was able to pass on the savings to its customers and, thus, obtain a larger share of the market.

If Stainless learned of this "price list", it, supposedly, would contact the supplier to obtain the same low price, equalize the competition and cut into the 2–5 million dollars in sales it had with Burger King Corporation.

Mr. Tyson also testified that he specifically informed McCann that the "price list" was confidential. Yet, during the years of McCann's employment for the plaintiff, it was only within a "couple of weeks" of the hearing date that availability to the information at issue was restricted.

When McCann took the stand, she recounted how she had never been advised of the confidentiality of the "price list". Further, when she refused to sign an employment agreement with the plaintiff she was still promoted to Sales Administrator, which encompassed easy access to the forty-one pages, as well as eleven pages of supplementation, making up the "price list". Finally, McCann stated that she had no intention to disclose such information to Stainless

because it could discover this listing on its own if it wanted to do so.

At the completion of the hearing, the Chancellor heard argument and received briefs on behalf of the respective litigants. The next day, the Chancellor entered the following order:

> AND NOW, this 12th day of August, 1987, upon consideration of Plaintiff's Motion for Preliminary Injunction and of the testimony and authorities provided by the parties, it is hereby ORDERED that Defendant Marcie McCann is preliminarily enjoined from disclosing the following information to Defendant Stainless Manufacturing, Inc.:
>
> The prices charged to Plaintiff Tyson Metal Products, Inc. for equipment, which prices are used by Tyson in formulating bids and proposals to Burger King Corporation, by equipment suppliers who charge Tyson a lower price for said equipment than they charge all of Tyson's competitors.
>
> Bond in the sum of $5,000 to be posted.

This appeal ensued and challenges the order on the grounds that (1) the "price list" was not a trade secret, and, even if it were, (2) it was not communicated to McCann under circumstances which created an obligation of secrecy.

■ The starting point in every case of this sort is not whether there was a confidential relationship, but whether, in fact, there was a trade secret to be misappropriated.[1] *Van Products Co. v. General Welding and Fabricating Co.*, 419 Pa. 248, 213 A.2d 769 (1965). Moreover, this is the

---

1. More particularly, to be entitled to an injunction against use or disclosure of information, under Pennsylvania law, a plaintiff must show:

    (1) that the information constitutes a trade secret; (2) that it was of value to the employer and important in the conduct of his business; (3) that by reason of discovery or ownership the employer had the right to the use and enjoyment of the secret; and (4) that the secret was communicated to the defendant while employed in a position of trust and confidence under such circumstances as to make it inequitable and unjust for him to disclose it to others, or to make use of it himself, to the prejudice of his employer.

course to pursue because there was no evidence that a restrictive covenant was executed between the parties. See *Felmlee v. Lockett,* 466 Pa. 1, 351 A.2d 273 (1976).

In Pennsylvania, the courts have adopted the definition of a trade secret given in the Restatement of Torts § 757, Comment b (1939):

> A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. It may be a formula for a chemical compound, a process of manufacturing, treating or preserving materials, a pattern for a machine or other device, or a list of customers.

See *Felmlee,* supra, 466 Pa. at 9, 351 A.2d at 277; *Van Products Co.,* supra, 419 Pa. at 258–59, 213 A.2d at 775. In addition, the Third Circuit in *SI Handling Systems, Inc. v. Heisley,* 753 F.2d 1244 (1985) offered:

> Some factors to be considered in determining whether given information is a trade secret are: (1) the extent to which the information is known outside of the owner's business; (2) the extent to which it is know by employees and others involved in the owner's business; (3) the extent of measures taken by the owner to guard the secrecy of the information; (4) the value of the information to the owner and to his competitors; (5) the amount of effort or money expended by the owner in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. Restatement of Torts § 757 comment b (1939); *International Election Systems Corp. v. Shoup,* 452 F.Supp. 684, 706 (E.D.Pa.1978), *aff'd,* 595 F.2d 1212 (3d Cir.1979).

753 F.2d at 1256.

One cannot dispute that the "price list" in the possession of the plaintiff is a "compilation of information which is

*SI Handling Systems, Inc. v. Heisley,* 753 F.2d 1244, 1255 (3rd Cir.1985) (Citations omitted).

used in [its] business, and ... gives [it] an opportunity to obtain an advantage over competitors who do not know or use it." Restatement of Torts § 757. However, that is only the beginning of the inquiry. Like all terminology, it is subject to application premised upon its interpretation, which, in turn, is controlled by *the particular facts of the case under review.*

As was made mention of in Comment b to Section 757 of the Restatement of Torts, "the ease or difficulty with which the information could be properly acquired or duplicated by others" is *a factor* in weighing its status as a "trade secret".

To that end, we observe instantly that, on cross-examination, the vice-president of Tyson admitted that the competition, specifically Stainless, *could* contact a mutual customer and ask why its bid was rejected in favor of Tyson's. Once it was discovered that the discrepancy related to a particular item, the competition could proceed to contact the supplier of the item (contained on Tyson's "price list") and ask what price it was charging Tyson in contrast to the competitor. Tyson's vice-president agreed that this could be done. The fact of whether the supplier would disclose its price to Tyson was another matter; nonetheless, the scenario just reconstructed to access the information sought was possible and not improbable.

Thus, if the information the plaintiff seeks to keep confidential could be obtained by legitimate means by its competitors, the enjoining of McCann from disseminating the same information makes little sense, either in law or logic. In other words, "they ['price lists'] are matters which any industrious person [c]ould learn in [the manufacturing food service] field in [Stainless'] position. [Consequently, t]hey are not of such character as to be classified as trade secrets." *Van Products Co.,* supra, 419 Pa. at 262, 213 A.2d at 777.

In a context akin to the one before us, the Federal Third Circuit concluded that knowledge of the lower prices

charged by suppliers to SI Handling Systems, Inc. would not be recognized as a trade secret. In doing so, it wrote:

> Here the information SI wishes to enjoin appellants from using (the identity of the vendors and the price of their merchandise) is already in the hands of third parties—*i.e.*, the bearing suppliers—who have every incentive, and every right, to disclose it to their customers. To prevent appellants from using this information would put an undue burden on the innocent vendors, as well as place an artificial constraint on the free market. As the Pennsylvania Supreme Court recognized in *Van Products, supra*, "material sources and costs" are "something that would be learned in any productive industry, ..." 419 Pa. at 261, 213 A.2d at 776. *See also Jewish Employment and Vocational Service v. Pleasantville Educational Supply Corp.*, 220 U.S.P.Q. 613, 626–27 (E.D.Pa.1982). The district court erred as a matter of law in holding that knowledge of alternate suppliers of parts, and their prices, is protectible as a trade secret. (Language to the contrary in *Sims v. Mack Truck Corp.*, 488 F.Supp. 592, 601 (E.D.Pa.1980) is not supported by the cases cited therein and we reject that language.)

753 F.2d at 1257. Accord *Van Products Co.*, supra, 419 Pa. at 261, 213 A.2d at 776; *United Boiler and Engineering Co. v. Gordon*, 50 Erie L.J. 71, 80–82 (1966) (Knowledge and information, such as price lists and costs are not trade secrets).

Instantly, as in *SI Handling Systems, Inc.*, the prices a supplier charges to the plaintiff/customer are known to the supplier, who has every right to disclose this information, if it so chooses, to inquiring competitors of the plaintiff—a fact which even the vice-president of Tyson did not discount as a possible event.

■ Because the information sought to be kept secret could be discovered through legitimate channels (contacting the suppliers personally) by energetic, conscientious and eager members of the competition, we fail to discern how the prohibition of the disclosure of the identical data

468

through McCann renders it trade secret information subject to protection by means of an injunction.

As for the measures implemented by the plaintiff to guard against any potential pilfering of the "price list", see *SI Handling Systems, Inc.,* supra, Tyson's vice-president conceded that the first steps to keep the "price list" confidential transpired a mere "couple of weeks" before the preliminary injunction hearing. Prior thereto, any employee in the company could have made a copy of the information at issue by means of a computer read-out, since there was no mechanism in place to screen those permitted to view this document.

Accordingly, for the reasons herein stated, we find the Chancellor's preliminary injunction is unwarranted under the facts and the law.

Order reversed. Jurisdiction relinquished.