The **FONDA GROUP, INC.,** Plaintiff,

v.

**ERVING INDUSTRIES, INC., Erving Paper Products, Inc., Daniel K. Schafer, Robert Cerminara,** Defendants.

Civ. A. No. 95–5402.

United States District Court, E.D. Pennsylvania.

Sept. 14, 1995.

---

Christopher J. Moran, Schnader, Harrison, Segal and Lewis, Philadelphia, PA, Brian J. McMahon, Jeffrey P. Flynn, Patrick C. Dunican, Jr., Crummy, Del Deo, Dolan, Etal, Newark, NJ, for plaintiff.

Joel Cardis, Cardis, Kraut & Harris, Blue Bell, PA, for defendant.

### MEMORANDUM AND ORDER

KATZ, District Judge.

**AND NOW,** this 14th day of September, 1995, upon consideration of plaintiff's Motion for a Preliminary Injunction and Defendant's Motion for Partial Summary Judgment, and following a hearing, it is hereby **ORDERED** that plaintiff's Motion for Preliminary Injunction and defendant's Motion for Partial Summary Judgment are **DENIED.**

Defendants Daniel Schafer and Robert Cerminara were both employees of Scott Foodservice Division (the "Division").[1] After the assets of the Division were acquired by The Fonda Group, Inc. ("Fonda") for $30 million, Schafer and Cerminara did not accept employment with Fonda and left Scott's employ. Defendant Erving then hired Schafer and Cerminara for substantially identical positions. Erving directly competes with the Division. Fonda now seeks a preliminary injunction to enforce covenants not to compete which Schafer and Cerminara signed when they worked for Scott.

In order to obtain a preliminary injunction, the plaintiff must demonstrate (1) that there is a reasonable probability of success on the merits, (2) that the plaintiff will be irreparably injured by the denial of the relief, (3) that granting the preliminary injunction will not cause even greater harm to the defendant, and (4) that granting the preliminary injunction is in the public interest. *ECRI v. McGraw–Hill, Inc.,* 809 F.2d 223, 226 (3d Cir.1987).

Whether the employment contracts at issue in this case are assignable is an open question in Pennsylvania. No Pennsylvania appellate court has ruled on the issue. At least one Pennsylvania trial court[2] has held that such personal service contracts without language expressly allowing assignments are not assignable. *See Armstead v. Miller,* 52 Pa.D. & C.2d 584, 595 (Allegheny Co.1971). Courts in Vermont and Alabama have not allowed the assignment of restrictive covenants absent a showing of the parties' intent to allow assignment. *See Sisco & Jordan v. Empiregas, Inc.,* 286 Ala. 72, 237 So.2d 463, 468 (1970); *Smith, Bell & Hauck, Inc. v. Cullins,* 123 Vt. 96, 183 A.2d 528, 532 (1962).

Other, distinguishable, cases support assignments of restrictive covenants. *Howe v. Anderson,* 23 Pa.D. & C.3d 297, 301 (Adams Co.1982) (allowing assignment where corpo-

---

1. At the termination of their employments, Schafer was President of Scott Foodservice Division and Cerminara was the Marketing Manager.

2. Judge Brosky, who authored the opinion, is now a Senior Superior Court Judge.

ration was owned and operated by the same individual who signed the contract with the defendant); *Green's Dairy Inc. v. Chilcoat*, 89 Pa.D. & C. 351, 353 (York Co.1953) (assignment was ratified); *Jack Tratenberg, Inc. v. Komoroff*, 87 Pa.D. & C. 1, 13 (Phila.Co.1951) ("Defendant's knowledge of the incorporation of his former employer and his conduct in continuing in plaintiff's employ without objection thereafter constituted assent to the assignment to plaintiff of defendant's employment contract.").[3] New York and New Jersey courts have allowed the assignment of restrictive covenants. *A. Fink & Sons, Inc. v. Goldberg*, 101 N.J.Eq. 644, 139 A. 408, 410 (N.J.Ch.1927); *Norman Ellis Corp. v. Lippus*, 13 Misc.2d 432, 176 N.Y.S.2d 5, 6 (N.Y.Sup.Ct.1955). Whether the restrictive covenants could have been assigned to Fonda thus presents a difficult and close question of law. *See Sovereign Order of Saint John v. Messineo*, 572 F.Supp. 983, 990 (E.D.Pa.1983).

■ Moreover, the Asset Purchase Agreement ("APA") is ambiguous as to whether the employment contracts at issue were assigned. There is a reasonable argument that the most specific reference to "employment . . . agreements" in the APA is Section 3.08(b) and thus if the parties intended to assign Schafer and Cerminara's contracts, the contracts would have been listed, but the relevant Schedule 3.08(b) does not include the two specific restrictive covenants at issue or any others. This interpretation is enhanced by the letter from plaintiff dated May 3, 1995 urging Scott to enforce the restrictive covenants at issue. Def.Exh. 1; *see also* Def.Exh. 2, 3, 4, and 9. Scott believed it could enforce the restrictive covenants at issue after the closing. Nothing in the contracts at issue suggests that the parties intended or expected the restrictive covenants to be assignable. On the other hand, there is also a reasonable argument that the two restrictive covenants were assigned by the general language in Schedule 3.08—"Uniform Employment Agreement with Scott Paper Company."

In view of these two reasonable but conflicting interpretations of the agreements on the issue of whether the two restrictive covenants were, in fact, assigned, there is ambiguity which would allow for the development of extrinsic evidence to determine the intentions of the parties.[4] However, on the presently sketchy and relatively undeveloped record, I cannot find that plaintiff has met its burden of demonstrating a likelihood of success on the merits on that issue at this stage.

■ On balancing the relative harms, an injunction would put the two employees out of work. Indeed, even if the individual defendants are compensated monetarily, an injunction still requires that they be out of the work force in their field for almost two years, with a serious risk of difficulty in finding future employment. The two employees'

---

**3.** *Boyce v. Smith–Edwards–Dunlap Co.*, 398 Pa.Super. 345, 580 A.2d 1382, 1387 (1990), *alloc. denied*, 527 Pa. 639, 593 A.2d 413, and *alloc. denied*, 527 Pa. 650, 593 A.2d 422 (1991), cited by the plaintiff, is clearly distinguishable. In *Boyce*, the plaintiff and defendant's stock purchase agreement specifically included the employee's employment agreement. Thus, there was no assignment. Moreover, in *Camenisch v. Allen*, 158 Pa.Super. 174, 44 A.2d 309, 311 (1945), the assignors breached the contract with the employee. It was on this rationale that the court found that the contract was not enforceable by the assignee. The court therefore never reached the issue of whether the restrictive covenant was assignable.

**4.** For example, when the employee defendants ceased to be employed by Scott, the separation agreements were between Scott, not Fonda, and the defendants. Thus, the intention of the parties with respect to these agreements needs to be developed more fully, particularly with respect to the alleged assumption of the liability for the differential payments.

Moreover, the ". . . Assumption Agreement" does not refer to the two employment agreements at issue, but rather generally incorporates liabilities and obligations of the Seller disclosed in Schedule 3.08 of the APA.

There is also an unresolved and not fully developed issue of waiver and plaintiff is entitled to discovery on that issue as it claims in its Reply Memorandum.

It is also unclear whether Schafer's agreement was entered into ancillary to his employment. See Exh. D–4.

Mr. Uleau's testimony was conclusory on the intent of the parties. Development of evidence in discovery about the nuts and bolts of the negotiations is necessary to determine the true intent.

harm from a preliminary injunction far exceeds the harm to the plaintiff from denying preliminary relief. Plaintiff has not demonstrated irreparable injury on this record.

I am not confident that the public interest favors the establishment of a market in bare restrictive covenants.

Moreover, on the present record, the plaintiff has not demonstrated irreparable harm regarding its alleged risk from disclosure of trade secrets or confidential information or any alleged breach of the contract provisions in this regard. The two employees took their management and selling skills, not publicly unavailable technical data or valuable confidences, with them. *See Tyson Metal Prods., Inc. v. McCann,* 376 Pa.Super. 461, 546 A.2d 119, 122 (1988) ("[I]f the information the plaintiff seeks to keep confidential could be obtained by legitimate means by its competitors, the enjoining of [the defendant] from disseminating the same information makes little sense, either in law or logic.").[5] Plaintiff has not demonstrated on this record a risk of irreparable harm from loss of technological secrets, secret customer information, pricing secrets (where there has been rapid change), sources of materials (as to which the contract was renegotiated recently), product data, computer databases, sales strategies (influenced largely by the bigger players in the industry rather than by these litigants), and the like by misappropriation of the defendants. There is no credible showing on the present record that the two individual defendants have disclosed or intend to disclose to their present employer such data, whether in the daily production area (in which Erving is not entered), the non-skid "patented" tray area (where the market is eroding), or otherwise. No loss from such disclosure has been demonstrated, nor does the present record demonstrate a serious risk of such loss. It is less than clear that

damages would be inadequate to compensate any future loss.

If the restrictive covenant claims should fall, there would not be a viable claim against Erving for interference with a contractual relationship.

The Motion for Partial Summary Judgment is denied because there are genuine issues of material fact. The court will enter an appropriate order for orderly discovery to develop the factual issues in fuller detail than the present sketchy record.

---

5. The *Tyson* court additionally suggests that
    Some factors to be considered in determining whether given information is a trade secret are: (1) the extent to which the information is known outside of the owner's business; (2) the extent to which it is know [sic] by employees and others involved in the owner's business; (3) the extent of measures taken by the owner to guard the secrecy of the information; (4) the

value of the information to the owner and to his competitor; (5) the amount of effort or money expended by the owner in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.
*Id.,* 546 A.2d at 121 (quoting *SI Handling Systems, Inc. v. Heisley,* 753 F.2d 1244 (1985)).