**Pollack v. Skinsmart Dermatology
and Aesthetic Center P.C.**

418

*David E. Landau* and *Michael D. Shaffer,* for plaintiff.

*Alfred J. Monte Jr.* and *V. Erik Peterson,* for defendant.

COHEN, G.D., *J.,* October 5, 2004—Presently before the court are the plaintiff's motion for partial summary judgment and the defendants' motion for summary judgment. Plaintiff is Andrew Pollack M.D. d/b/a Philadelphia Institute of Dermatology (PID). Defendants are Skinsmart Dermatology and Aesthetic Center P.C., Toby Shawe M.D., Samy Badawy M.D. and Natalie Wilson.[1]

---

1. Defendants Susan Clegg, Terri Dezzi, Susan Fitzpatrick, Diane McCurdy, Joan Ward and Kristin Kane were dismissed from this matter by stipulation on June 4, 2004.

## BACKGROUND

The conflict between the parties stems from the defendants use of a list of patients to start a medical practice.

Dr. Pollack is the sole proprietor of PID, which offers dermatological services to patients throughout the Philadelphia area. Dr. Shawe's association with the practice began in 1994 and lasted until August 21, 2002. Dr. Badawy's tenure with PID ran from 1998 until August 21, 2002. Ms. Wilson was an employee of PID, serving as Dr. Pollack's medical assistant from 1987 until August 16, 2002.

As owner of PID, Dr. Pollack was responsible for its operation and management, including rent, salaries, equipment, medical supplies, other overhead, and staffing. Neither of the doctors had any management responsibilities, nor did they have any ownership interest in PID. Rather, both doctors worked at PID as independent contractors and received a certain percentage of the income collected by PID for each patient they treated.

At the practice, each patient was billed under PID's name and PID controlled the flow of funds generated by the patients. All patient files and information were maintained at PID. A database composed of every patient seen at the practice was kept on PID's computer system, which only certain PID employees could access in its entirety. In addition, each physician who practiced at PID had an appointment book that was maintained by PID employees.

In late 2001, Dr. Pollack discussed the sale of the majority of PID's practice locations with Drs. Shawe and

Badawy. Negotiations continued through the following summer. Both sides hired attorneys and Dr. Pollack had his practice appraised. A tentative agreement was reached in June 2002.

On August 5, 2002, Dr. Shawe presented Dr. Pollack with resignation letters for both herself and Dr. Badawy. Prior to this date, the doctors had PID staff members make copies of the appointment books assigned to each of them and printouts of certain portions of the database (such information, the patient list). The doctors sought the information germane to any patients either had seen at PID.

Following their departure from PID, the doctors established Skinsmart as their new practice. Although Skinsmart opened its doors on September 3, 2002, a lease had been executed before the doctors final day at PID. On August 8, 2002, while all were still affiliated with PID, the doctors offered Ms. Wilson a job with Skinsmart.

The patient list was used by Ms. Wilson to call patients, previously scheduled for procedures at PID, to reschedule them to Skinsmart. Drs. Shawe and Badawy also called patients and sent out a mailing to both patients and referring physicians informing them about Skinsmart. A substantial number of the patients at Skinsmart came from the patient list and resulted in profits to Skinsmart of approximately $700,000.

## DISCUSSION

Pursuant to Pa.R.C.P. 1035.2, a party may move for summary judgment when (1) there is no genuine issue of material fact as to a necessary element of the cause of

action or defense or (2) an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense. The court must review the entire record in the light most favorable to the nonmoving party and resolve all genuine issues of material fact against the moving party. *Basile v. H & R Block Inc.*, 563 Pa. 359, 365, 761 A.2d 1115, 1118 (2000).

Both parties have moved for summary judgment. Plaintiff moves for partial summary judgment on Counts I, III, and IV of his amended complaint and for summary judgment on Counts III and IV of defendants' amended counterclaim. Defendants move for summary judgment on all counts of plaintiff's amended complaint.

## *Plaintiff's Amended Complaint*

Count I of plaintiff's amended complaint asserts a claim for misappropriation of trade secrets. To establish this claim, the plaintiff must show: (1) the existence of a trade secret; (2) that it was of value to him and important in the conduct of his business; (3) that by reason of discovery or ownership he had the right to the use and enjoyment of the secret; and (4) that the secret was communicated to the defendants while they were in a position of trust and confidence under such circumstances as to make it inequitable and unjust for them to disclose it to others, or to make use of it themselves, to the prejudice of plaintiff. See *e.g., Gruenwald v. Advanced Computer Applications Inc.*, 730 A.2d 1004, 1012-13 (Pa. Super. 1999).

The plaintiff must define the contested trade secret. There is no precise test for determining whether certain

information is a trade secret. Competing policies lay beneath this area of the law: "The right of a business person to be protected against unfair competition stemming from the usurpation of his or her trade secrets must be balanced against the right of an individual to the unhampered pursuit of the occupations and livelihoods for which he or she is best suited." *Fidelity Fund Inc. v. DiSanto,* 347 Pa. Super. 112, 120, 500 A.2d 431, 436 (1985). For this reason, to qualify for protection, the information "must be the particular secrets of the complaining employer, not general secrets of the trade in which he is engaged." *Renee Beauty Salon Inc. v. Blose-Venable,* 438 Pa. Super. 601, 607-608, 652 A.2d 1345, 1349 (1995). Additionally, an employee possesses his aptitudes, skills, and subjective knowledge, even if gained in the course of his employment. *Christopher M's Hand Poured Fudge Inc. v. Hennon,* 699 A.2d 1272, 1275 (Pa. Super. 1997).

Pennsylvania courts use the definition of trade secret contained in the Restatement (First) of Torts §757, comment b. *Felmlee v. Lockett,* 466 Pa. 1, 9, 351 A.2d 273, 277 (1976). Both the Restatement and precedent indicate that certain customer lists are considered trade secrets. *A.M. Skier Agency Inc. v. Gold,* 747 A.2d 936, 940 (Pa. Super. 2000); *Felmlee.* Several factors provide guidance for determining whether certain information is a trade secret: "(1) the extent to which the information is known outside of the owner's business; (2) the extent to which it is known by employees and others involved in the owner's business; (3) the extent of measures taken by the owner to guard the secrecy of the information; (4) the value of the information to the owner and to his competitors; (5) the amount of effort or money expended by

the owner in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others." *Tyson Metal Products Inc. v. McCann,* 376 Pa. Super. 461, 465, 546 A.2d 119, 121 (1988).

Against this backdrop, it is clear the patient list is a trade secret, worthy of protection. As conceded by defendants, the confidentiality of patient information ensures that it remain unknown to those outside the practice and makes the patient list valuable. (Def. memo. 14 n.8.) Although this concession is enough to establish the patient list as a trade secret, the other *Tyson Metal* factors also support this outcome. Through the substantial efforts of plaintiff, the patient list was compiled over numerous years, (plf. aff., ¶4), and contained 20,000 names with related information. (4/5/04 Pollack dep. tr. 58.) PID spent money for computers, software, and employees to keep and maintain the patient list. (Plf. aff., ¶4; 3/30/04 Wilson dep. tr. 13.) Within the offices of PID, the information was not universally known or accessible. Not every staff member, including the practicing physicians, could pull the records. (4/5/04 Pollack dep. tr. 35.) Defendant Wilson did not have access to them, (3/30/04 Wilson dep. tr. 13), and the doctors relied on other PID employees to access the patient list. (1/16/04 Wiley dep. tr. 81, 83; 1/26/04 Shawe dep. 39; 9/29/02 Badawy dep. tr. 40; 3/30/04 Wilson dep. tr. 16.) These same factors demonstrate that plaintiff sought to protect the secrecy of the information.

The plaintiff must demonstrate that the trade secret has value and importance to him and his business. As noted above, defendants acknowledge the value of the

patient list to PID's practice. In addition, plaintiff relied upon the patient list as the core component of his practice. (4/5/04 Pollack dep. tr. 18.)

To have the rights to the use of the trade secret, the plaintiff needs to show he either discovered or owned the trade secret. Plaintiff compiled the patient list over numerous years. The patient list was maintained on PID's computers by PID's employees. Plaintiff's tax returns show that PID was owned solely by plaintiff. (Plf. exhibit F.) These facts establish plaintiff's ownership of the patient list.

The final element of a misappropriation claim focuses on the relationship between the parties. Under Pennsylvania law, the duty not to disclose trade secrets arises from either a restrictive covenant or a confidential employment relationship. *Christopher M's Hand Poured Fudge Inc. v. Hennon,* 699 A.2d 1272, 1276 (Pa. Super. 1997). There are no contracts guiding the parties in this case. It is clear, however, that the doctors had a confidential relationship while working at PID. They treated patients on behalf of PID and accessed the patients' confidential medical records in order to provide treatment. For Wilson, her position as a PID employee establishes the necessary relationship between herself and plaintiff.

As for the misuse of this information, defendant Wilson copied the patient list for Dr. Badawy. (3/30/04 Wilson dep. tr. 16.) At the direction of the doctors, she used the patient list to call patients to reschedule them from PID to Skinsmart. (3/30/04 Wilson dep. tr. 27, 28.) The doctors used the patient list to open their practice, (def. memo. 4-6), and to contact patients. (1/26/04 Shawe dep. tr. 65; 9/29/02 Badawy dep. tr. 89.)

As outlined above, plaintiff has established each element of a claim for misappropriation of trade secrets against the individual defendants. Nonetheless, defendants challenge this outcome on two fronts. First, defendants assert that the patient list was not a trade secret because certain names on the patient list may not have exclusively belonged to PID. Defendants' argument minimizes the additional efforts of PID in organizing and compiling the contact and other information for each patient. At bottom, this argument does not counter the finding that the patient list is a trade secret, but impacts the issue of damages. Second, defendants propose a standard of conduct for misappropriation of trade secrets higher than the law requires without any justification. Therefore, the court shall grant partial summary judgment to plaintiff on Count I against the individual defendants,[2] limited to the issue of liability for the claim of misappropriation of trade secrets.

Count II of plaintiff's amended complaint brings a claim for tortious interference with contractual relations. To prove this claim, the plaintiff must demonstrate that "(1) there is an existing contractual relationship between the plaintiff and a third party; (2) the defendant interfered with the performance of that contract by inducing a breach or otherwise causing the third party not to perform; (3) the defendant was not privileged to act in this manner; and (4) the plaintiff suffered pecuniary loss as a result of the breach of contract." *Al Hamilton Contracting Co. v. Cowder,* 434 Pa. Super. 491, 497, 644 A.2d 188, 191 (1994). The keystone of this claim is a current

---

2. This claim is inapplicable to Skinsmart.

contractual relationship between the plaintiff and another. *Id.* Plaintiff has presented no evidence that any such contract exists. Instead, plaintiff merely cites the dissent in *Moses v. McWilliams,* 379 Pa. Super. 150, 177, 549 A.2d 950, 964 (1988), without noting the different focus of that court, in an attempt to create an issue of material fact. Therefore, the court shall grant summary judgment to the defendants on Count II and dismiss the claim.

Count III of plaintiff's amended complaint makes a claim for unjust enrichment. To establish unjust enrichment, a plaintiff need demonstrate three elements: (1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. *Mitchell v. Moore,* 729 A.2d 1200, 1203 (Pa. Super. 1999). In determining whether the doctrine applies, the focus is not on the intention of the parties, but on the result. *Ameripro Search Inc. v. Fleming Steel Co.,* 787 A.2d 988, 991 (Pa. Super. 2001). This makes it critical that the enrichment of the defendant be unjust. *Styer v. Hugo,* 422 Pa. Super. 262, 268, 619 A.2d 347, 350 (1993).

Each component of unjust enrichment has been established against the doctors and Skinsmart. It is clear the patient list is a benefit. It was the core of plaintiff's practice and plaintiff and the doctors engaged in negotiations for the sale of the patient list and other assets of PID. (Def. memo. 4; plf. exhibit F.) The defendants made use of the patient list in setting up Skinsmart. Finally, the patient list was a trade secret and defendants took it from plaintiff without compensation. There is no evidence that

defendant Wilson received any benefit from the patient list.

Defendants contend that there can be no unjust enrichment in this case because there was no misappropriation of trade secrets and ethical duties required the taking of the patient list. As explained previously, the patient list was a trade secret and the defendants wrongfully acquired it. As raised, the ethical argument does not create an issue of material fact because it does not impact any of the elements of this claim. Therefore, the court shall grant summary judgment to the plaintiff on Count III against the doctors and Skinsmart on the issue of liability alone.

Count IV of plaintiff's amended complaint brings a claim for breach of the implied duty of loyalty. The duty of loyalty is a component of the agent-principal relationship. "[A]n agent owes a duty of loyalty to his principal, and in all matters affecting the subject of his agency, he must act with the utmost good faith in the furtherance and advancement of the interests of his principal." *Sylvester v. Beck,* 406 Pa. 607, 610, 178 A.2d 755, 757 (1962).

In order to breach the duty of loyalty, the defendants must have been agents of PID. Three elements establish an agency relationship: (1) the manifestation by the principal that the agent shall act for him; (2) the agent's acceptance of the undertaking; and (3) the understanding of the parties that the principal is to be in control of the parties. *Basile v. H & R Block Inc.,* 563 Pa. 359, 367, 761 A.2d 1115, 1120 (2000). For defendant Wilson, her agency status is created by her position as a PID employee. The doctors challenge their characterization as

agents and assert that they were merely independent contractors. Although there was no contractual relationship between the doctors and PID, the record shows that they treated patients at PID, (def. memo. 22), PID managed the billing for all patients they saw there, (1/16/04 Wiley dep. tr. 16-18), PID paid all overhead, (9/29/02 Shawe dep. tr. 15; 7/29/02 Badawy dep. tr. 31), and they were paid by PID. (9/24/02 Pollack dep. tr. 20-22, 25-26; 9/29/02 Shawe dep. tr. 43; 9/29/02 Badawy dep. tr. 34-35.) These facts establish an agency relationship for the doctors. There is no indication that Skinsmart could in any manner be an agent of plaintiff.

In the context of this agency relationship, the individual defendants' unauthorized use of the patient list to establish Skinsmart is a clear breach of their duty of loyalty to PID. In addition, the doctors breached this duty by conceding they took patients from PID they did not bring to the practice. (Def. memo. 8, 26.) For defendant Wilson, giving a copy of the patient list to Dr. Badawy while employed by PID violates this duty, as do her phone calls attempting to reschedule PID patients.

Defendants rely upon the Restatement of Agency[3] to show that an agent has no duty to its former principal following the termination of the agency relationship. Restatement (Second) of Agency §396. This section of the Restatement, however, emphasizes that the duty of the agent not to compete with the principal using the latter's trade secrets outlasts the agency relationship. *Id.*

---

3. Pennsylvania courts have adopted the Restatement (Second) of Agency. See generally, *Sylvester v. Beck,* 406 Pa. 607, 178 A.2d 755 (1962) (citing Restatement); *Basile v. H & R Block Inc.,* 563 Pa. 359, 761 A.2d 1115 (2000) (same).

at comment b ("Such assets a former agent cannot properly use for his own purposes."). Since the patient list constitutes a trade secret this latter application of the principle applies and the defendants cannot evade their duty to PID. Although the damages caused by the breach cannot be determined at present, the court shall grant partial summary judgment on the issue of liability against the individual defendants on Count IV.

## Defendants' Amended Counterclaim

Count III of defendants' amended counterclaim asserts a claim for fraud. To establish a claim for fraud, a claimant must prove the following: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Gibbs v. Ernst,* 538 Pa. 193, 207, 647 A.2d 882, 889 (1994). (footnote omitted) The parties dispute whether it is necessary for the claimant to rely on the misrepresentation under this claim.

Defendants assert that the reliance element is established whenever the person misled acts in such a manner as to harm the claimant. Although the defendants rely upon *Klemow v. Time Inc.,* 466 Pa. 189, 352 A.2d 12 (1976), to support this position, nowhere does this case make such a statement. Rather, the *Klemow* court noted that to prove fraud, a claimant must show that it "acted in reliance on the defendant's misrepresentations." *Id.* at 197 n.17, 352 A.2d at 16 n.17. Defendants also look to the case of *Feingold v. Greenstone,* 11 D.&C.3d 172,

177 (Phila. Cty. 1979), which noted that one element of the tort "is the requirement that the recipient of the fraudulent misrepresentation justifiably rely on the misrepresentation to the detriment of plaintiff." The cited proposition, however, is not as broad as defendants believe. The *Feingold* court's statement was a paraphrase of *Borelli v. Barthel,* 205 Pa. Super. 442, 445, 211 A.2d 11, 13 (1965), which clearly indicates that the claimant must rely on the misrepresentation.

Defendants have produced no evidence that they relied on plaintiff's misrepresentation. Instead, they argue that two patients of the doctors were the recipients of plaintiff's misrepresentations. (9/29/02 Shawe dep. tr. 62; 1/16/04 Wiley dep. tr. 56-57.) This evidence fails to establish defendants' reliance on the misrepresentation. Therefore, summary judgment shall be granted to the plaintiff on Count III of the amended counterclaim.

Count IV of defendants' amended counterclaim brings a claim for replevin. To establish this claim, a party needs to show that (1) he has title to property and (2) another party has unlawful possession of that property. *Wilson v. Highway Service Marineland,* 274 Pa. Super. 391, 395, 418 A.2d 462, 464 (1980). Here, the contested property includes two framed paintings, a Mayo stand, a stereo and a large cryac gun. (Def. amended counterclaim ¶102.) To prove the second element of this claim, defendants contend that plaintiff's changing of the locks to PID's offices is an unlawful act. Since this action occurred after the doctors had resigned and departed from PID, (9/29/02 Shawe dep. tr. 8-9), it is not unlawful. Therefore, summary judgment shall be granted to plaintiff on Count IV of defendants' amended counterclaim.

## ORDER

And now, October 5, 2004, upon consideration of plaintiff's motion for partial summary judgment (control no. 042247), defendants' motion for summary judgment (control no. 042178), and the replies and responses thereto, it is hereby ordered and decreed as follows:

(1) On Count I of plaintiff's amended complaint, partial summary judgment is granted on the issue of liability only against defendants Shawe, Badawy, and Wilson;

(2) Count II of plaintiff's amended complaint is dismissed;

(3) On Count III of plaintiff's amended complaint, partial summary judgment is granted on the issue of liability only against defendants Shawe, Badawy, and Skinsmart;

(4) On Count IV of plaintiff's amended complaint, partial summary judgment is granted on the issue of liability only against defendants Shawe, Badawy, and Wilson; and

(5) Counts III and IV of defendants' amended counterclaim are dismissed.